COMMONWEALTH of Pennsylvania, Appellee,

v.

Ray D. McCOY, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Nov. 30, 2005.

Filed Feb. 21, 2006.

6. As a result of our disposition, we need not address Appellant's remaining issues on appeal.

John B. Mancke, Harrisburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: JOYCE, ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Ray McCoy, Jr. appeals from the March 21, 2005 judgment of sentence of 90 days to 18 months incarceration imposed after a non-jury trial in which he was convicted of two counts of driving under the influence [1] (DUI) and one count of violating the "driving on roadways laned for traffic" statute.[2]

¶ 2 The trial court set forth the underlying facts as follows:

On February 1, 2004, at approximately 10:50 p.m., the defendant lost control of his vehicle and struck a guide rail on an entrance ramp to Interstate 81 in Lower Paxton Township, Dauphin County, Pennsylvania. Police officers reporting to the scene observed that the defendant smelled of alcohol, had glassy, bloodshot eyes and slurred his speech. The defendant was arrested and transported to Harrisburg Hospital where a blood test was administered revealing the defendant's blood alcohol content to be .233%.

Trial Court Opinion, Kleinfelter, J., 10/28/05, at 1.

¶ 3 In this timely appeal, appellant raises the following questions for our review:

Whether it was fatal error for the arresting officer to begin the prosecution on a repealed section of the law and should the DUI charge(s) have been dismissed?

Whether it was error to charge, convict and/or sentence the Appellant to two separate counts of § 3802 since the subsections of § 3802 are not separate offenses and as such the reference to two separate counts in the information should have been stricken and the Appellant should not have been found guilty of two separate DUI counts (§ 3802(a)(1); (c)) or sentenced on two separate DUI counts (§ 3802(a)(1); (c)) and the finding of guilt on two counts violated the Appellant's double jeopardy

---

**1.** 75 Pa.C.S.A. § 3802(a) and (c).

**2.** *Id.,* at § 3309(1).

rights under the U.S. and Pa. Constitutions?

Whether the consent given for the blood test was invalid since the arresting officer read the incorrect implied consent warnings, gave incomplete warnings and gave an incorrect statement of the law (threatening loss of license when no loss of license would have occurred) negating the Appellant's consent to the blood test and the lower court erred in not suppressing the blood test results?

Whether the Appellant had the right to counsel at the time when he was arrested for a non-existent crime and was requested to take a chemical test, which right was denied?

Whether Chapter 38 of Act 24 of 2003, including specifically §§ 3802 and 3804, is unconstitutional, generally and as applied to Appellant, 3802(a)(1); (c), because it is vague and overbroad and allows for arbitrary enforcement in violation of substantive due process guaranteed by the 5th Amendment of the U.S. Constitution and Article I, § 9 of the Pa. Constitution?

Whether Chapter 38 of Act 24 of 2003, including specifically § 3802, prevents a licensed operator from driving after one incident of imbibing alcohol above a prohibited level and violates procedural due process protections of the State and Federal Constitutions generally and as applied to the Appellant?

Whether Act 24 of 2003, Chapter 38, including specifically §§ 3802–3804; 3806, violates the constitutional and due process protections against *ex post facto* laws, generally and as applied to the Appellant, by increasing the penalties on persons, including the Appellant, who violated 75 Pa.C.S.A. § 3731 prior to the effective date of Chapter 38 of the Act and making an innocent action, when done, criminal?

Whether Act 24 of 2003, Chapter 38, including specifically §§ 3802–3804; 3806, violates equal protection guarantees of the Pa. and U.S. Constitutions and violates the Appellant's equal protection guarantees?

Appellant's brief at 4.

¶ 4 The questions raised by appellant involve constitutional challenges, challenges to the legality of his sentence, the trial court's application of statutes, and general questions of law. Our review of all of those types of issues is plenary. *See Commonwealth v. Williams,* 871 A.2d 254, 262 (Pa.Super.2005) (reiterating that the issues of sentence legality and the trial court's application of statutes are questions of law over which this Court exercises plenary review); *see also Commonwealth v. Atwell,* 785 A.2d 123, 125 (Pa.Super.2001) (reiterating that this Court exercises plenary review over questions of law, including challenges to the constitutionality of statutes).

■ ¶ 5 Appellant first complains that the arresting officer, Trooper Mark Miscavich, advised him that he was being arrested for violating 75 Pa.C.S.A. § 3731, but that the complaint indicates he was charged with, and he was ultimately convicted of, violations of Section 3802.

¶ 6 Section 3731, **Driving under influence of alcohol or controlled substance,** was repealed by 2003, Sept. 30, P.L. 120, No. 24, § 14, *effective February 1, 2004,* the same day the underlying incident occurred, and replaced by the similarly titled 75 Pa.C.S.A. § 3802.

¶ 7 As authority supporting his argument, appellant cites *Commonwealth v. Bangs,* 259 Pa.Super. 68, 393 A.2d 720 (1978) (*en banc*). In *Bangs,* the defendant was charged with five counts of statutory rape of a fourteen year old victim. While the criminal action against him was pend-

ing, the statutory definition of statutory rape was amended, reducing the age of consent from sixteen to fourteen. This Court dismissed the charges against the defendant since the legislature determined that the conduct with which the defendant was charged was no longer criminal.

¶ 8 Appellant also cites *Scranton City v. Rose*, 60 Pa.Super. 458 (1915), in which the defendant had been convicted of violating a statute by refusing to provide maps or drawings of mines located within Scranton City limits to the city bureau of mines inspection and surface support. While his appeal was pending, however, the city ordinance creating the city bureau was repealed. This Court concluded the defendant's act was no longer criminal upon the city's repeal of the ordinance. Accordingly, the proceedings against the defendant were "wiped out."

¶ 9 This case is easily distinguished from the two cited by appellant in that the repeal of Section 3731 and its replacement with Section 3802, did not "decriminalize" the conduct for which appellant was arrested, i.e., the act of driving under the influence of alcohol. In addition, as cited by the trial court and the Commonwealth, both the United States Supreme Court and this Court have held that arresting officials are not required to inform an accused of the reason for the arrest at the time of the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (stating that "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required"); *see also Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640, 645 (1980) (stating that "[f]or the validity of an arrest to be upheld... it is not necessary that the accused be informed at the time of making the arrest of its cause if he knows that the arresting officials are police officials"). It follows then that appellant's arrest was not invalid simply because the arresting officer cited a recently repealed [3] statutory section at the time of his arrest, rather than the newly enacted section.

¶ 10 Finally, we note, as did the Commonwealth, that pursuant to 75 Pa.C.S.A. § 3811, **Certain arrests authorized**, a police officer is authorized to make a warrantless arrest if the officer has probable cause to believe that the individual has violated Section 3802, relating to driving under the influence of alcohol or controlled substance. Appellant does not dispute that there was probable cause to arrest him for driving under the influence of alcohol. We conclude appellant's arrest was proper and we thus reject his first allegation of error.

¶ 11 Next, appellant contends that his constitutional protections against double jeopardy were violated by his convictions, based on a single criminal act, under both subsections 3802(a)(1) and 3802(c).[4]

3. In fact, as noted *supra*, the repeal of 75 Pa.C.S.A. § 3731, **Driving under influence of alcohol or controlled substance**, took effect, and § 3802, **Driving under influence of alcohol or controlled substance**, became effective, on the date of appellant's arrest.

4. Section 3802 provides, in pertinent part,
   (a) GENERAL IMPAIRMENT.—
   (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient

amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

. . .

(c) HIGHEST RATE OF ALCOHOL.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the

Both parties and the court agree that the subsections of § 3802 are not separate offenses, and that a defendant may not be subjected to multiple penalties for violating more than one subsection of the statute. The court therefore concluded appellant's rights were not violated because he received one penalty based on his convictions for violating both subsections 3802(a)(1) and (c), "as the offenses merged for sentencing purposes." Trial Court Opinion, at 4; *see also* N.T., Sentencing, 3/21/05, at 4.

¶ 12 We find this Court's recent case of *Williams, supra,* to be instructive. In that case, officers found the defendant's car parked diagonally in a handicapped parking zone, taking up two spaces, with the engine running and defendant in the driver's seat, sleeping with both hands on the wheel. He apparently was intoxicated and blood tests confirmed a BAC of .138%. Based upon those facts, Williams was convicted under Sections 75 Pa.C.S.A. § 3731(a)(1) and (a)(4)(i), and received consecutive sentences on those counts.[5] Williams challenged the imposition of separate sentences for two subsections of Section 3731. We reiterated that the DUI statute, Section 3731, "proscribes a single harm to the Commonwealth—the operation of a vehicle [while] under the influence to a degree that renders an individual incapable of safe driving." *Williams,* at

> individual has driven, operated or been in actual physical control of the movement of the vehicle.

5. As noted previously, 75 Pa.C.S.A. § 3731 is the predecessor to Section 3802. The subsections of Section 3731, **Driving under influence of alcohol or controlled substance**, with which the defendant in *Commonwealth v. Williams,* 871 A.2d 254 (Pa.Super.2005) was convicted, are as follows:

> **(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

264, *citing Commonwealth v. McCurdy,* 558 Pa. 65, 73, 735 A.2d 681, 685–686 (1999). We elucidated that the offense, as defined in subsections 3731(a)(1) and (a)(4)(i), *cannot subject a defendant to separate sentences for a single act. Williams,* at 266. Accordingly, we vacated the judgment of sentence and remanded for re-sentencing. Significantly, we also noted in *Williams* that the relevance of our analysis continues, in light of the enactment of Section 3802. *Id.,* at 266 n. 9.

¶ 13 Here, like *Williams,* the appellant was convicted under two separate sections of the DUI law. Unlike *Williams,* however, appellant did not receive two separate sentences since the court here held that the violations of 3802(a)(1) and (c) merged for sentencing purposes. Appellant contends, however, his protections against double jeopardy were violated by his convictions of both subsections of 3802, and that the violation is not cured by the merger of the sentences. The following excerpt from *Williams* makes clear that merger was proper here, and appellant's protections against double jeopardy were not violated.

> When considering whether the merger doctrine bars separate sentences for convictions of two different provisions of the **same** statute, this Court stated:

> (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.
>
> . . .
> (4) While the amount of alcohol by weight in the blood of:
> (i) an adult is 0.10% or greater;

These subsections are comparable to those subsections of 75 Pa.C.S.A. § 3802 with which appellant in this case was charged, and which are set forth *supra.* Appellant concedes that these subsections are similar to those of § 3802. *See* appellant's brief at 15.

To resolve this challenge we need not engage in the traditional merger analysis of lesser and greater included offenses. Instead *we examine the rationale favoring merger where a defendant has engaged in a single criminal act and he is found guilty of violating more than one section of a statute. If the sections that [the defendant] has violated are designed to proscribe a single harm and the defendant in violating them committed one act, then the sentences merge. Otherwise the sentences would constitute more than one punishment for the same crime and be impermissible as violative of double jeopardy.*

*Williams* at 264, *citing Commonwealth v. Dobbs,* 452 Pa.Super. 488, 682 A.2d 388, 391 (1996) (emphasis added). Accordingly, we find the merger was proper, and appellant's protections against double jeopardy were not violated. We thus reject this allegation of error.

■ ¶ 14 Thirdly, appellant contends the trial court should have suppressed the blood test results because appellant's consent to the blood test was invalid since the officer used an outdated "DL–26" form. The DL–26 form informs a person pursuant to 75 Pa.C.S.A. § 1547, **Chemical testing to determine amount of alcohol or controlled substance,** that he is under arrest for DUI, that the officer is requesting that he submit to a chemical test of the officer's choice, e.g. blood, urine, etc., and of the implications of refusal to submit to the test. Appellant complains that as of February 1, 2004, an amended version of Section 1547, **Chemical testing to determine amount of alcohol or controlled substance,** became effective and the DL–26 form used by the officer did not comply with the "mandates of § 1547 applicable to the new DUI law." Appellant's brief at 19. Specifically, appellant complains that

pursuant to amended Section 1547, a DUI arrestee must be informed that he is under arrest for a violation of Section 3802, but the version of the form used by the officer here informed appellant he was under arrest for a violation of Section 3731. This is but another attempt to argue the first issue appellant raised and we reject it. Appellant was informed he was being arrested for DUI.

¶ 15 In addition, amended Section 1547 provides that a person arrested for a violation of 3802 who refuses to submit to the chemical testing will have his license suspended. 75 Pa.C.S.A. § 1547(b). Appellant argues that since the officer and the DL–26 form used here informed him he was being arrested for violating Section 3731, not 3802, the officer's statement that he would lose his license if he refused to submit to the chemical test was "clearly in error;" he states, "suspension for refusal applies only if the Appellant has been placed under arrest for § 3802." Appellant's brief at 23. We reject this argument. Appellant was arrested for DUI; a DUI arrestee who refuses to submit to chemical testing is subject to license suspension under both former and amended Sections 1547. Appellant does not dispute that he was informed of this penalty.

■ ¶ 16 Also as to this issue, appellant complains he was not informed that amended Section 1547 requires that a DUI arrestee who refuses to submit to chemical testing also will be subject to penalties set forth in Section 3804 **Penalties (c) Incapacity; highest blood alcohol; controlled substances.** *See also* 75 Pa.C.S.A. § 1547(b)(2)(ii). Appellant consented to the blood test and it is patently illogical to suggest that appellant would have refused had he known that by doing so, he would have been subject to additional penalties. Appellant was not prejudiced in any way. If he had refused the blood test, but was

not informed of the additional penalties, he might have a basis for relief if § 3804(c) penalties were imposed, but that is not the case.

■ ¶ 17 Finally, we note that the majority of the cases cited by appellant in support of his arguments on this issue are inapposite because they involve cases in which the DUI arrestee's license was suspended due to a *refusal* to consent to a chemical test but the individual was not informed, or was ill-informed, of the implications of refusal as required by law. As noted by the trial court and the Commonwealth, in the case of *Commonwealth v. Mordan*, 419 Pa.Super. 214, 615 A.2d 102 (1992), we clarified that Section 1547 is an *implied consent* statute applicable to all drivers and requires that a motorist submit to chemical tests under appropriate circumstances.[6] It does not require that a motorist's consent to a chemical test be informed but does require that a motorist's refusal be informed. *Id.* Appellant consented to the test and for the above-stated reasons he is not entitled to relief on this basis.

■ ¶ 18 Next, appellant complains that at the time he was arrested and asked to submit to a chemical test, he was denied his right to counsel under the 6th Amendment to the U.S. Constitution, and Article I, § 9 of the Pennsylvania Constitution. He argues that the right to counsel applies particularly to this case because he was arrested for "a non-existent crime" (again referring to the fact that the officer cited Section 3731 rather than Section 3802),

and he was asked to submit to a blood test, but was "misled" by the officer as to the implications of refusing to take the test by failing to inform him properly as to Section 1547. He also suggests that the decision to consent to a chemical test constitutes a critical stage of the prosecution because, pursuant to appellant's reading of Section 3804, one who refuses to submit to a chemical test is subject to enhanced criminal penalties, and the refusal must be proven as a separate element beyond a reasonable doubt.

¶ 19 A panel of this Court very recently addressed the issue of whether a person's sixth amendment right to counsel is violated if he has no right to consult with an attorney before deciding whether to consent to a chemical test requested by police. *See Commonwealth v. Ciccola*, 2006 Pa.Super. 23, 894 A.2d 744 (2006). In *Ciccola*, we acknowledged that the sixth amendment right to counsel attaches at critical stages of a criminal proceeding. We concluded that the decision to submit to a BAC test, although an important tactical one, is made during an encounter involving the gathering of evidence and does not effect the fairness of the trial, "vis-a'-vis the ability to cross-examine witnesses or have effective assistance of counsel at the trial itself." *Id.*, at ¶ 14. Thus, we concluded, such encounters are not considered to be critical proceedings for the purposes of the right to counsel. *Id.*

■ ¶ 20 We note too that a panel of this Court has previously disposed of the issue of "whether the right to speak with an attorney attaches when the results of a

---

6. Section 1547(a), **General rule**, provides that
   Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth *shall be deemed to have given consent* to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a con-

trolled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle [under the specified circumstances, including a violation of Section 3802].
75 Pa.C.S.A. § 1547(a) (emphasis supplied).

breathalyzer test will be used as evidence in a criminal proceeding." *Commonwealth v. West,* 370 Pa.Super. 365, 536 A.2d 447, 449 (1988). In *West,* it was noted that under both the Sixth Amendment to the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, the right to counsel attaches at all critical stages of the criminal proceeding. *Id.; see also Commonwealth v. Arroyo,* 555 Pa. 125, 141, 723 A.2d 162, 170 (1999), (concluding that the right to counsel guaranteed by Article I, Section 9 of the Pennsylvania Constitution is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right attaches.) A "critical stage" of the prosecution is defined as "any stage of the prosecution, formal or informal, in or out of court, where counsel's absence might derogate from the accused's right to a fair trial." *Id., quoting U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We concluded,

the presence of an attorney prior to the administration of a breathalyzer test is not necessary to ensure that an accused receives a fair trial on charges of driving while under the influence of alcohol. Such a procedure is not akin to a lineup, which contains the dangers of suggestiveness and misidentification which an attorney's legal training and experience may be able to prevent. Moreover, a breath test is not testimonial in nature so as to make an attorney's presence essential to preserve the accused's privilege against self-incrimination. The breathalyzer is mechanical in nature, and the trial of the case presents adequate opportunity to explore and challenge the accuracy of the device used to implement the test, as well as the qualifications of the personnel who conducted it.

¶ 21 *West,* at 450. We further noted, "[t]o now require that one accused of drunk driving be given the right to consult with an attorney prior to consenting to a breathalyzer test would frustrate the very purpose of the implied consent law [75 Pa.C.S.A. § 1547]." *West,* at 450. Further, "[d]elay in administering the test would, because of the evanescent nature of alcohol in the blood stream, serve only to impair the accuracy of the test." *Id.* This rationale is equally applicable to the amended DUI law, and appellant did not have a right to counsel at that juncture. All of appellant's arguments to the contrary on this issue are inapposite as the standard is whether the juncture is a "critical stage" of the prosecution. For the above stated reasons, the decision as to whether to consent to a chemical test is not a critical stage of the prosecution and thus we reject appellant's arguments on this issue.

¶ 22 Appellant next maintains Sections 3802 and 3804 are unconstitutional, "generally and as applied to appellant, 3802(a)(1); (c), because it is vague and overbroad and allows for arbitrary enforcement in violation of substantive due process guaranteed by the 5th Amendment of the U.S. Constitution and Article I, § 9 of the Pa. Constitution." Appellant's brief at 4.

¶ 23 We begin our review of this issue by noting the following applicable principles of law. First,

there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it

"clearly, palpably and plainly" violates the constitution.

*Commonwealth v. Barud,* 545 Pa. 297, 304, 681 A.2d 162, 165 (1996) (citations omitted).

As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [A] statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge their future conduct.

A statute is 'overbroad' if by its reach it punishes constitutionally protected activity as well as illegal activity. The language of the statute in question literally encompasses a variety of protected lawful conduct.

*Id.,* at 304–305, 681 A.2d at 165–166 (citations omitted).

¶ 24 The gravamen of appellant's argument on this issue is that Section 3802 does not require that the accused actually have driven while under the influence of alcohol to a prohibited degree. He contends that under 3802(a)(1), which provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle", a person who, on one occasion, imbibed a sufficient amount of alcohol such that he was rendered incapable of safe driving, can never drive again without being in violation of this provision, even if the person has completely ridded himself of any alcohol in his system.[7] Appellant states,

[t]he due process issue can be simply stated as follows:

Can the legislature prohibit a person from ever driving a motor vehicle after that person has imbibed a sufficient amount of alcohol to render that person incapable of safe driving without any time limit or nexus between the imbibing and the act of driving?

Appellant's brief at 42.

¶ 25 Our rules of statutory construction and interpretation provide that we are to attempt to ascertain the effect of the legislature. 1 Pa.C.S.A. § 1921. If the language leaves any doubt, we can consider, *inter alia,* the mischief to be remedied by the statute, and the object to be obtained. *Id.* We are to presume that the legislature did not intend a result that is absurd or unreasonable. *Id.,* § 1922. Also, "courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute." *Barud, supra,* at 304, 681 A.2d at 165. Further, as appellant notes, the title and preamble of a statute may be considered in its construction. *Id.,* § 1924.

¶ 26 Applying the above, we conclude the following. It is quite clear from the title of Section 3802, **Driving under influence of alcohol or controlled substance,** that the mischief the legislature seeks to remedy is, in fact, *driving while under the*

7. The predecessor to Section 3802, Section 3731, provided that a "person shall not drive, operate or be in actual physical control of the movement of any vehicle: (1) while under the influence of alcohol to a degree which renders the person incapable of driving[.]" 75 Pa.C.S.A. § 3731, Repealed by 2003, Sept. 30, P.L. 120, No. 24, § 14, effective Feb. 1, 2004.

*influence of alcohol or a controlled substance.* It would be utterly absurd and unreasonable to suggest that a person who imbibed a sufficient amount of alcohol such that he is rendered incapable of safe driving will, from that time forward, even after becoming sober, forever be in violation of the statute if he proceeds to drive. Surely, an enormous number of licensed drivers, at one time or another, have imbibed alcohol to the point of being incapable of safe driving. The legislature certainly did not intend a result that would prohibit a vast number of licensed drivers from ever driving again. We simply cannot accept appellant's interpretation.

¶ 27 Moreover, we conclude this provision is not vague. It gives a person of ordinary intelligence notice that he may not drive after imbibing a sufficient amount of alcohol such that he is incapable of driving safely. As the trial court explained, "the time elapsed between the act of driving is irrelevant. The only relevant issue... is the capacity to drive safely and whether any found incapability is *causally related* to the consumption of alcohol." Trial Court Opinion at 8 (emphasis supplied). Further, we find the provision is not overbroad since it does not punish any constitutionally protected activity. *See Barud, supra.*

¶ 28 Appellant argues Section 3802(c), **Highest rate of alcohol**, also suffers from the same due process problem as discussed above.[8]

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(c). In this argument, appellant relies heavily upon *Barud, supra,* in which our Supreme Court ruled that now repealed Section 3731(a)(5) was unconstitutionally vague and overbroad. That section provided that

> [a] person shall not drive, operate or be in actual physical control of the movement of any vehicle... if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is ... obtained within three hours after the person drove, operated or was in actual physical control of the vehicle ....

75 Pa.C.S.A. § 3731(a)(5)(i), Repealed by 2003, Sept. 30, P.L. 120, No. 24, § 14, effective Feb. 1, 2004. Significantly, pursuant to Section 3731(a)(4), now repealed, a person was presumably within the law if he drove with a BAC below 0.10%.[9] When

---

8. Appellant makes the same complaint as to sections 3802(a)(2), (b), (e), and (f). These sections refer to: (a)(2) alcohol concentrations in an individual's blood or breath of at least 0.08% but below 0.10%; (b) alcohol concentrations in an individual's blood or breath of at least at least 0.10% but below 0.16%; (e) minors; and (f) commercial or school vehicles. An individual launching a constitutional challenge to a statute must be injured by it. He cannot challenge it in the abstract. *Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172 (1986). Appellant was not charged with violating these sections; thus, we find he may not challenge them. *See Commonwealth v. Dodge,* 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981) (providing that a defendant "does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution").

9. Section 3731(a)(4) provided that "[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle:... while the amount of alcohol by weight

Section 3731(a)(5) was added, however, a person could have driven with a BAC below 0.10%, a lawful act pursuant to 3731(a)(4), but if his BAC rose above 0.10% within three hours after driving, he was in violation of Section 3731(a)(5).[10] In *Barud*, the Court concluded that Section 3731(a)(5) was unconstitutional because "without requiring any proof that the person actually exceeded the legal limit of .10% at the time of driving, the statute sweeps unnecessarily broadly into activity which has not been declared unlawful in this Commonwealth, that is, operating a motor vehicle with a BAC below .10%." *Barud* at 305, 681 A.2d at 166. The Supreme Court found Section 3731(a)(5) had "the effect of creating significant confusion as to exactly what level of alcohol in the blood is prohibited under the Motor Vehicle Code[,]" since it created "two circumstances in which a person could be prosecuted: either where a person had an actual BAC of .10% at the time of driving (under § 3731(a)(4)), or where a person has a BAC which is *somewhere* below .10% at the time of driving but which rises above .10% within three hours after driving (under § 3731(a)(5))." *Id*, at 306, 681 A.2d at 166. The Court explained,

[i]ndeed, the most glaring deficiency of § 3731(a)(5) is that the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit at the time of driving. Rather, the statute criminalizes a blood alcohol level in excess of the legal limit up to three hours after the

last instance in which the person operated a motor vehicle and without any regard for the level of intoxication at the time of operation. Thus, a person may be prosecuted under § 3731(a)(5) even though his or her blood alcohol level did not actually rise above the legal limit of .10% until after the last instance in which he or she drove.

*Id.*, at 306, 681 A.2d at 166. In the amended DUI law, Section 3802, the confusion caused by contradictory Sections 3731(a)(4) and (a)(5) has been eliminated. Section 3802 no longer has a provision like 3731(a)(4). Thus we conclude *Barud* is not controlling.

¶ 29 Section 3802 provides a person may not drive after imbibing a sufficient amount of alcohol such that a chemical test taken within two hours after the person has driven reveals a prohibited BAC. *See* 75 Pa.C.S.A. § 3802(a)(2), (b), and (c). This is not vague. Appellant cannot meet his burden of proving Section 3802 "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute or that the section encourages arbitrary and erratic enforcement." *Commonwealth v. Mikulan*, 504 Pa. 244, 252–253, 470 A.2d 1339, 1343 (1983) (plurality). As our Supreme Court has recognized, charts are widely available which indicate the amount of alcohol that can be safely consumed by persons of varying weights. *Id.*, at 255, 470 A.2d at 1344. An individual of ordinary intelligence who chooses to over imbibe, thereby risking a prohibited BAC, and then choos-

---

in the blood of the person is 0.10% or greater[.]" 75 Pa.C.S.A. § 3731(a)(4), Repealed by 2003, Sept. 30, P.L. 120, No. 24, § 14, effective Feb. 1, 2004.

**10.** This is possible as experts in previous cases have testified that it takes time for alcohol to be fully absorbed and reach its peak level. A person may consume alcohol and then drive but his BAC may peak only after he

operates a motor vehicle. *See Commonwealth v. Barud*, 545 Pa. 297, 303, 681 A.2d 162, 164–165 (1996); *Commonwealth v. Jarman*, 529 Pa. 92, 96, 601 A.2d 1229, 1231 (1992); *Commonwealth v. Modaffare*, 529 Pa. 101, 105, 601 A.2d 1233, 1234 (1992); *Commonwealth v. Gonzalez*, 519 Pa. 116, 130, 546 A.2d 26, 33 (1988).

es to drive, is certainly aware this conduct is prohibited. He may take that risk, but "the Commonwealth has squarely, and fairly, placed the risk of erroneous judgment of alcohol consumption on the person who has the choice, the drinking driver, rather than upon unwitting and innocent victims...." *Id.* That the Commonwealth has two hours after the individual has driven in which to conduct a chemical test does not make the statute ambiguous. Specifically as to appellant, certainly he cannot argue that he was unaware that he was prohibited from driving with a .233% BAC. Further, as for encouraging arbitrary or erratic enforcement, any discretion is eliminated by the objective standard of BAC. *See id.,* at 253, 470 A.2d at 1343 n. 8. It is simply ludicrous to suggest, as appellant does, that an officer can exercise discretion by somehow knowing just when the person's BAC will peak and will time the chemical test accordingly. Appellant's brief at 46.

¶ 30 Some of appellant's arguments on this issue are more relevant to an over breadth challenge, in that he contends that a person who may have driven when his BAC was "below the prohibited level" at the time of driving but it later reaches the prohibited level after driving, is guilty under 3802, and that a person will only reach the prohibited level "simply because the officer is waiting for the person's BAC to peak during the two hour period before requesting the test." Appellant's brief at 46. In other words, appellant appears to argue that in these examples, the individual's conduct is somehow protected. We must point out that there is no longer a statutory provision such as former 3731(a)(4) which provides that a person may drive if his BAC is below a particular BAC *at the time of driving.* Rather, the pertinent question under 3802(a)(2), (b), and (c), is "what is the

individual's BAC as determined by a test taken within two hours of driving?". Further, "there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving." *Mikulan, supra,* at 254, 470 A.2d at 1344 (emphasis in original). Accordingly, Appellant's arguments in this regard must fail.

¶ 31 Based on his argument that once an individual has imbibed a sufficient amount of alcohol such that he is rendered incapable of safe driving, he may never drive again under the language of Sections 3802(a)(1), (a)(2), (b), (c), (e), and (f), appellant next contends the sections violate constitutional guarantees of procedural due process. We already have declined to accept this interpretation of the statutory language in that it would render an absurd and unreasonable result.

¶ 32 Appellant next asserts the amended DUI law is an unconstitutional *ex post facto* law, in part based on the same argument that once an individual has imbibed a sufficient amount of alcohol such that he is rendered incapable of safe driving, he may never drive again under the language of the amended DUI law. Again, we refuse this interpretation. In addition, appellant contends that there is an *ex post facto* violation since, under 3806(b), DUI offenses within the last ten years are now considered in the determination of whether the individual has prior offenses, whereas under the prior law, the "look back" period was only seven years. Appellant had a DUI in June of 1995. Under the former law, this 1995 DUI would not have been considered a prior offense. He maintains the new ten year "look back" improperly increased his penalties for past acts. We reject this contention. First, there is a presumption that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General

Assembly." 1 Pa.C.S.A. § 1926. Here, the General Assembly did not "clearly and manifestly" intend the DUI law to be retroactive. For instance, the ten year "look back" would not apply to DUI convictions which occurred before February 1, 2004. In any event, this principle "becomes pertinent only after it has been determined that a proposed operation of a statute would indeed be retrospective. In this regard, our courts have held that *a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.*" *Alexander v. DOT, Bureau of Driver Licensing,* 583 Pa. 592, 604, 880 A.2d 552, 559 (2005) (citation omitted, emphasis supplied). The statute does not reach into the past and increase punishment *for concluded DUI convictions.* The statute, rather, considers "facts or conditions" which came into existence prior to its enactment, i.e. prior DUI convictions, and effects only the punishment for a new conviction under the newly enacted DUI law.

¶ 33 In addition, this Court recently addressed a due process challenge to the ten year look back provision of Section 3806 and reiterated that "the enhanced punishment imposed for a later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one." *Commonwealth v. Tustin,* 2005 Pa.Super. 386, ¶ 6, 888 A.2d 843 (2005), *citing Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). The trial court's application of 3806(b) did not further punish appellant's 1995 offense, but created an enhanced penalty for his 2004 offense. *See Tustin,* at ¶ 8.

¶ 34 The fact is, appellant is a DUI recidivist. He may not like that the new statute now looks back ten years making his 1995 DUI a prior offense, thereby enhancing his punishment for his new DUI offense, but that is what the legislature intended. There is no *ex post facto* violation.

¶ 35 Appellant's final allegations are that the new DUI law violates both state and federal equal protection guarantees in the following respects. He says the statute improperly implemented a "three tier" scheme under 75 Pa.C.S.A. § 3802(a)(2), (b), and (c), and § 3804, based upon the individual's BAC, and argues the grading of offenses under this scheme will arbitrarily be affected by the time of testing, which he argues is at the officer's discretion. He further argues it is improper that a person with a 0.10% BAC, tested at the time of driving, will be treated more harshly then a person who had the same BAC at the time of driving but was tested later and registered a 0.09% BAC at the time of testing.

¶ 36 We begin by noting that since this case does not involve a fundamental right or suspect class and does not involve an important right or sensitive classification, our inquiry rests upon whether there exists a rational basis for the classification. *Commonwealth v. Etheredge,* 794 A.2d 391, 396 (Pa.Super.2002). We also reiterate the following pertinent principles:

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the pur-

pose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation. Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. In undertaking its analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction. *Id.*

¶ 37 As to appellant's first equal protection argument, it is certainly very difficult to make a case that the legislature would *not* have a rational basis for treating drivers with higher rates of alcohol in their blood more severely than those with lower rates. The legislature certainly could have assumed that the more alcohol a driver has in his system, the more danger he poses on the road. Further, the statute does not classify offenders differently based upon their BAC at the time of driving versus at the time of a chemical test. Rather, the legislature clearly recognized that a per-

son's BAC is dynamic in nature and often chemical tests are administered, not precisely when the defendant drove, but only after that time. *See Commonwealth v. Barud, supra.* Under the new DUI statute, the pertinent inquiry is the person's BAC at the time of the test, and that test is to be administered within two hours after the individual has driven. We find no equal protection violation in this regard.

¶ 38 Appellant further contends the statute improperly "allows for no time nexus for those consuming alcohol but requires a time nexus for those using drugs." Appellant's brief at 62. This contention is based upon appellant's argument, which we have repeatedly rejected, that an individual who once imbibed to the point of being incapable of safely driving a car is forever prohibited from driving under § 3802. The sections pertaining to driving under the influence of alcohol, Sections 3802(a), (b) and (c), and the one relating to driving under the influence of a controlled substance, Section 3802(d), all require the person to be driving while under the influence. Accordingly, we reject this equal protection challenge.

¶ 39 Appellant further contends the statute may treat offenders with the same BAC levels differently based upon whether or not they were in an accident involving bodily injury or property damage, regardless of whether the accident was the individual's fault. *See* 75 Pa. C.S.A. § 3804(b) (providing that an individual who violates 3802(a), **General impairment**, who would normally be subject to penalties found in 3804(a) **General impairment**, is placed in the "High rate of alcohol" classification under 3804(b) for penalty purposes, "where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property...."). Two drivers with the same BAC

level may then be treated differently, one based upon the negligent acts of another. Similarly, appellant contends that 3807(d)(3)(iii) increases the length of ARD related suspension of driving privileges based upon whether there was an accident resulting in bodily injury or property damage, regardless of whether the accident was the DUI offender's fault. Surely the essential purpose of the DUI legislation is to prevent bodily injury and property damage caused by drivers under the influence of drugs and alcohol. We speculate that the legislature may not have imposed a requirement that the DUI offender be determined to be at fault for the accident before enhancing penalties based upon an accident, because it may have concluded the individual, while not technically determined to be at fault, likely shares some of the blame due to his intoxicated state. Further, the legislature may not have deemed it necessary to engage in that line of inquiry. Put simply, if a person drives under the influence of drugs or alcohol and is in an accident involving bodily injury or property damage, the protection therefrom being the essential purpose of the DUI law, then that person has risked the harshest of penalties. Since we find these purposes to be genuine, we cannot declare this "classification" to be void.

¶ 40 Appellant also complains that Section 3807(d)(3)(iii) imposes the same license suspension where there is no BAC result, whether a person refused to take a chemical test, or if they were never asked. The legislature may have very well concluded that where there is no BAC result, it is more likely than not due to a person's refusal to submit to the test. Further, where no BAC result exists, the individual must be classified under the current DUI scheme. The legislature did not act unreasonably by failing to give a DUI offender the benefit of the doubt, instead ascribing

the highest penalties in these instances, since the offender assumed the risk by driving while under the influence of drugs or alcohol.

¶ 41 For the above stated reasons, we reject appellant's challenges and affirm his judgment of sentence.

¶ 42 Judgment of sentence affirmed.