**Commonwealth v. Jaeger.**

---

*Michael S. Greek,* for plaintiff.
*Michael P. Gough,* for defendant.

NANOVIC, J., November 30, 2012—Following a bench trial on July 20, 2012, James J. Jaeger ("defendant") was found guilty of two counts of driving under the influence ("DUI") in violation of 75 Pa.C.S.A. §§ 3802(a)(1) and (d)(3), and one count of driving on right side of roadway in violation of 75 Pa.C.S.A. §3301(a). Following his sentencing on August 13, 2012,[2] defendant filed a post-sentence motion whereby he sought a judgment of acquittal on the basis that the evidence was insufficient to support his convictions for DUI. Defendant further sought an arrest of judgment or, in the alternative, a new trial on the basis that the verdict of guilty, as to the DUI convictions, was against the weight of the evidence. By order dated August 27, 2012, we denied defendant's challenge to the verdict.[3]

---

2. Pursuant to 75 Pa.C.S.A. § 3804 (c)(1), as a first time offender, defendant was sentenced to a term of imprisonment of not less than seventy-two hours nor more than six months, loss of his driving privileges for a period of one year, and a fine of two thousand five hundred dollars for violating Section 3802(d). Additionally, defendant was ordered to make restitution to the victims of the motor vehicle accident resulting from this violation in the amount of one thousand two hundred five dollars and eighty-seven cents ($1,205.87), and to their insurance company in the amount of eleven thousand two hundred fifty-eight dollars and thirty-five cents ($11,258.35). By order dated September 20, 2012, this sentence was modified, upon stipulation of the parties, to delete the latter amount, the court being advised that defendant's insurance company had reimbursed this amount to the victim's insurance company. But see *Commonwealth v. Stradley*, 50 A.3d 769, 773(Pa.Super. 2012) (requiring the sentencing court to direct defendant to pay restitution to his own insurance company when it is determined that the victim has been fully compensated by defendant's insurance carrier). No further sentence was imposed for defendant's Section 3802(a) violation, this conviction having merged with that under Section 3802(d). See *Commonwealth v. McCoy*, 895 A.2d 18, 24 (Pa.Super. 2006) (requiring merger where violations of subsections of the same statute are designed to proscribe a single harm and the defendant in violating them committed one act). A fine of twenty-five dollars was imposed on the summary offense.

3. In his post-sentence motion, defendant also petitioned this court to continue his release on bail pending appeal, as well as requested the

Defendant filed his notice of appeal to the Superior Court on September 25, 2012. At the time, we were not provided a copy. However, upon learning of the appeal, we immediately issued a rule 1925(b) order on October 9, 2012, granting defendant twenty-one days within which to file a concise statement of matters complained of on appeal. After this time had passed, defendant requested additional time to file his concise statement. This request was granted, and on November 5, 2012, defendant's statement was filed. In this statement, defendant identifies the same issues previously raised in his post-sentence motion. For the reasons that follow, we believe the appeal is without merit.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 4, 2010, Valerie Stankavage ("Wife"), Joseph Stankavage ("Husband"), and their eight-month-old son were traveling eastbound on State Route 443, in Mahoning Township, Carbon County, on their way home from a family gathering they had attended earlier that day. In this area, Route 443 is a two lane highway, running generally in an east/west direction. As Wife was operating her vehicle, a Nissan Altima, Husband sat behind her next to their son, who was seated in his car seat. Unexpectedly, two headlights appeared in the westbound lane, heading directly for the Stankavage vehicle. The headlights belonged to defendant's vehicle, a Nissan Xterra. Defendant, who was by himself, continued

appointment of new counsel. We granted defendant's request to remain on bail, conditioned upon his perfecting and pursuing an appeal. Additionally, new counsel has since entered his appearance for defendant.

150

driving in the wrong lane for a distance of approximately three hundred and fifty feet. (N.T. 7/20/12, pp.96-97, 103). Just before impact, defendant swerved to his right crashing his vehicle into the front driver side of the Stankavages' sedan.[4]

The accident occurred at approximately 6:27 P.M. Both Officer Richton Penn of the Mahoning Township Police Department and Sergeant Joseph Lawrence of the Leighton Borough Police Department were dispatched to the scene. Officer Penn arrived first, at approximately 6:31 P.M. Upon his arrival, he observed defendant sitting in the driver's seat of the Xterra.[5]

At first, Officer Penn thought defendant was unconscious, as he was slumped over the driver's seat. With the intent of gaining defendant's attention, Officer Penn knocked on the driver's side window of defendant's vehicle. Defendant responded by rolling the window down. The officer asked defendant if he was hurt, to which defendant replied no. (N.T. 7/20/12, p.28).

Next, Officer Penn directed defendant to remain in his vehicle until emergency medical services ("EMS") arrived. As they waited, Officer Penn requested that defendant produce identification. After searching through

_____

4. Wife was unable to move her car to the westbound lane as there were other vehicles traveling in that direction. A steep rise adjacent to the eastbound lane prevented her from pulling off the road on her side of the highway. Wife slowed her vehicle down and moved as close as possible to the eastbound shoulder. (N.T. 7/20/12, pp.104-105). Unfortunately, she was unable to avoid the collision.

5. When he arrived, Officer Penn observed the Xterra partially in the westbound lane and partially on the shoulder. The Altima was observed to be partially in the eastbound lane and partially on the shoulder.

his wallet and the center counsel of his vehicle for close to four minutes, in the process passing over his driver's license multiple times while looking through his wallet, defendant eventually located his license. During this initial exchange, Officer Penn noticed that defendant's speech was slurred and that his eyes had a glassy-like appearance.

EMS arrived a short time later. After being escorted to the EMS vehicle, defendant refused treatment. Officer Penn attempted to speak with defendant regarding this decision. During this second exchange, the officer noticed that defendant's breath smelled of alcohol and that defendant had difficulty standing on his own, needing to lean against the EMS vehicle in order to maintain his balance. Suspecting that defendant was under the influence of alcohol, the officer asked defendant whether he had been drinking. Though originally denying he had any alcoholic beverages that day, defendant later admitted to having a few drinks. (N.T. 7/20/12, p.29).

At the officer's request, defendant performed two field sobriety tests and failed both.[6] Defendant explained to Officer Penn that he was unable to perform the tests because of the prescription medication he had taken that day.[7] (N.T. 7/20/12, p.31). Defendant was unable to recall

6. The two tests administered were the heel to toe, and one leg stand. Officer Penn also administered the horizontal gaze nystagmus test.

7. Defendant suffers from lupus and other medical conditions. As of December 4, 2010, defendant was taking at least eleven prescription medications. (N.T. 7/20/12, pp.136, 177-78). These included Cabergoline, Methotrexate, Naprosyn, Lyrica, Flexeril, Oxycontin, Pristique, Prednisone, Folic Acid, Actonel, and Mobic. (defendant's Exhibit No. 3). At the time of the accident, defendant was being weaned

how long prior to operating the vehicle he had taken this medication.

It was at this point in time that Sergeant Lawrence arrived at the scene. Sergeant Lawrence observed defendant being given the horizontal gaze nystagmus (HGN) test. Sergeant Lawrence noticed as well that defendant's speech was slurred and that defendant was off balance and swayed. Later, while performing an inventory search of defendant's vehicle prior to its removal from the accident scene, Sergeant Lawrence found a plastic bag with several white pills inside. (Defendant's Exhibit No. 2; N.T. 7/20/12, p.201). No prescription containers or prescription information was found. (Defendant's Exhibit No. 1). Defendant claimed these were samples his doctor had given him.

Based upon his observations at the scene, Officer Penn initially concluded that defendant was under the influence of alcohol to a degree which rendered him incapable of safe driving. (N.T. 7/20/12, p.32-33). As such, defendant was taken into custody and a search incident to arrest was performed. From defendant's pant pockets, Officer Penn recovered three pills wrapped in a plastic baggie and a small white plastic bottle without markings also containing several pills inside.[8] (N.T. 7/20/12, pp.33-34, 62, 201). The officer transported defendant to the Gnaden Huetten Memorial Hospital in Leighton, where he refused

from Prednisone.

8. Officer Penn was unable, at the time of the search, to identify the pills. He did, though, submit the evidence to the Pennsylvania State Police Crime Lab. No further information regarding the identification of the pills was introduced at trial.

to submit to a blood test.[9] Defendant did not complain of nor was he treated for any injuries at the hospital. (N.T. 7/20/12, p.35).

A criminal complaint was filed against defendant on January 12, 2011. On July 20, 2012, defendant appeared before this court for a bench trial, where he was found guilty of two counts of DUI and one count of driving in the opposite lane of traffic, a summary offense. Defendant has since been sentenced and his post-sentence motion denied. On September 25, 2012, defendant filed a timely appeal with the Pennsylvania Superior Court challenging both the sufficiency and weight of the evidence to sustain the DUI convictions. We discuss both issues below.

## DISCUSSION

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his convictions for DUI under 75 Pa.C.S.A §§ 3802(a)(1) and (d)(3).

---

9. When they arrived at the hospital, Officer Penn read defendant the PennDOT DL-26 Form and advised him of his rights. Defendant requested to speak with an attorney, which Officer Penn explained he was not entitled to at this stage of the proceedings. Defendant then asked to speak with his wife, and again the officer explained that he did not have the right to speak with anyone regarding his decision. Defendant responded by screaming that he was not refusing to take the test, but rather that he was simply not consenting to it. He did so multiple times. The officer explained to defendant that failure to consent to the test would be considered a refusal. Sergeant Lawrence witnessed this exchange, which lasted approximately twenty minutes. At the conclusion, defendant's refusal to submit to the blood alcohol test was documented by Officer Penn. (Commonwealth Exhibit No. 1). Linda Hopis, a registered nurse, was a witness to defendant's refusal. According to her stipulated testimony, she would not have signed as a witness to defendant's refusal had she not heard the O'Connell warnings read.

When reviewing a sufficiency of the evidence claim, the court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 904 A.2d 30, 37-38 (Pa.Super. 2006) (citations omitted).

A. DUI — Section 3802(a)(1)

In regards to Section 3802(a)(1), defendant claims that the Commonwealth failed to establish that he had consumed a sufficient amount of alcohol to render him incapable of safe driving. We disagree.

To sustain a defendant's guilt under section 3802(a)(1), the Commonwealth must establish beyond a reasonable doubt that the defendant was operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving. 75 Pa.C.S.A. § 3802(a)(1). Here, the evidence, when viewed in the light most favorable to the Commonwealth, was clearly sufficient to sustain a finding that defendant did just that.

The arresting officer testified that defendant exhibited

several signs of intoxication — slurred speech, glassy eyes, inability to stand on his own, an odor of alcohol, difficulty producing his identification, and failure to pass several field sobriety tests. Based upon these observations and being of the opinion that defendant was under the influence of alcohol to a degree which rendered him incapable of safe driving, Officer Penn took defendant into custody and requested a blood alcohol test. Defendant refused. In addition, defendant drove in the face of on-coming traffic and was responsible for causing a motor vehicle accident. When questioned by Officer Penn, he denied that he was injured and he refused medical treatment.

These facts, combined with defendant's admission to having consumed two alcoholic beverages, amply support defendant's conviction of this offense.[10] See *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000) ("Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving."); *Commonwealth v. Feather*, 660 A.2d 90, 96 (Pa.Super. 1995) (evidence that driver had glossy eyes, slurred speech, strong odor of alcohol, imbalance, difficulty in producing license, and failure of field sobriety tests was sufficient to establish that she was under the influence of alcohol to a degree which rendered her incapable of safe driving); see

---

10. Although Sergeant Lawrence did not detect an odor of alcohol. Sergeant Lawrence did opine that defendant was clearly under the influence of alcohol or a controlled substance, and unable to drive safely. (N.T. 7/20/12, pp.72-73). We found the testimony of both officers to be credible.

also 75 Pa.C.S.A. § 1547(e) (refusal is a factor properly considered in determining whether a driver is under the influence of alcohol).

## B. DUI — Section 3802(d)(3)

We likewise find that the evidence was sufficient to support defendant's conviction of DUI pursuant to Section 3802(d)(3). In this regard, defendant challenges the sufficiency of the evidence on the basis that the Commonwealth failed to produce a qualified witness who could attest to the quantity of drugs, if any, present in his body and the effect that these drugs had on his ability to drive or operate a motor vehicle.

Section 3802(d) of the Vehicle Code provides:

(d) Controlled substances. — An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in... The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i)

or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(1)-(3) (emphasis added to subsection at issue here).

To sustain defendant's conviction under section 3802(d)(3), the Commonwealth must prove beyond a reasonable doubt that as the driver of a motor vehicle, defendant was under the combined influence of alcohol and a drug or a combination of drugs to a degree which impaired his ability to safely drive. 75 Pa.C.S.A. § 3802(d)(3). Pursuant to the plain language of the statute, it is not necessary to prove that any specific quantity of alcohol or of a drug was present in his system. Cf. *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa.Super. 2008) (interpreting Section 3802(d)(2) as addressing the effect, rather than the quantity, of a drug in a defendant's blood or urine), appeal denied, 980 A.2d 608 (Pa. 2009).

In *Commonwealth v. Griffith*, 613 Pa. 171, 180, 32 A.3d 1231, 1237 (2011), our Supreme Court noted that:

while subsection 3802(d)(1) prohibits driving when

there is any quantity of illegal drug in one's blood, subsections 3802(d) (2) and (d) (3) do not require that a drug be chemically detectible in the defendant's body or that blood tests be performed. Rather, the text of subsections 3802(d) (2) and (d) (3) requires only that one's ability to safely drive be impaired because of the influence of a drug.

*Id.* (citations omitted and emphasis in the original).

At issue in *Griffin* was whether expert testimony was required "to convict a defendant of driving under the influence of a drug or combination of drugs, 75 Pa.C.S. § 3802(d)(2), when the drugs in question are prescription medications." *Id.* at 1233. As a matter of law, the Court declined to "read into subsection 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's ability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination." *Id.* at 1238. Similarly, we conclude here that for the Commonwealth to prove its case under Section 3802(d)(3), it is not necessary to produce expert testimony to establish that defendant's ability to drive safely was impaired by the combined influence of alcohol and a drug or combination of drugs. This section "neither specifies nor limits the type of evidence that the Commonwealth may proffer to prove its case." *Id.* at 1238. Rather, as with Section 3802(a)(1), the Commonwealth is allowed to establish this element of the offense by wholly circumstantial evidence. *Id.* at 1238-39.

On the day of the accident, several white pills were

discovered in a plastic bag in defendant's motor vehicle, he had drugs in his pant pockets, and he acknowledged that he was unable to perform the field tests because of the prescriptive medication he had taken earlier that day. Hypodermic needles were also found in his vehicle. (Defendant's Exhibit No. 2; N.T. 7/20/12, p.205). This evidence, taken together with that discussed to sustain defendant's section 3802(a)(1) conviction, is more than sufficient to support a finding that defendant's ability to safely drive was impaired because of the influence of a combination of alcohol and one or more drugs.

Moreover, the evidence showed that defendant, a former bartender, had been warned against consuming alcohol while taking his prescription medications. Unfortunately, on the day of the accident, defendant ignored these warnings. The effect, as is evident, was tragically clear.

## II. WEIGHT OF THE EVIDENCE

Defendant also contends that he is entitled to have judgment arrested or, in the alternative, be awarded a new trial on the grounds the verdict of guilty as to the DUI charges was against the weight of the evidence.

It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice.

*Commonwealth v. Karns*, 50 A.3d 158, 166 (Pa. Super. 2012) (citation omitted).

A.   DUI — section 3802(a)(1)

With respect to section 3802(a)(1), defendant contends the verdict was against the weight of the evidence because the Commonwealth did not introduce evidence of defendant's BAC level and because the totality of the evidence indicates that the accident occurred as a result of a pre-existing medical condition, not alcohol.

We first note that Section 3802 (a)(1) does not require "a blood or breath test to determine alcohol level . . .; rather, a different standard is used, to wit, imbibing a sufficient amount of alcohol such that [one] is rendered incapable of safely driving." *Griffith*, at 1238 (citation and quotation marks omitted). Hence, the fact that the Commonwealth did not introduce evidence of defendant's BAC level is immaterial to defendant's claim.

In order to establish that defendant had consumed a sufficient amount of alcohol such that he was impaired and incapable of safe driving, the Commonwealth introduced the testimony of Wife that defendant was driving in the wrong lane, towards her, for almost three hundred and fifty feet. The Commonwealth further presented the testimony of the arresting officer that defendant's behavior was indicative of someone who was under the influence of alcohol, and that defendant had admitted to consuming two alcoholic beverages that day. In addition, two officers with experience in prosecuting DUI cases, both opined that defendant was under the influence and incapable of

safe driving. See *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1267 (Pa. Super. 2010)(under section 3802(a)(1) "the Commonwealth may present any form of proof, including defendant's behavior, the nature of the accident itself, and any other relevant evidence (which may or may not include blood alcohol tests)"), appeal denied, 40 A.3d 120 (Pa. 2012).

To refute this evidence, defendant presented the testimony of various family members and a friend. The first to testify was defendant's wife, Heather Jaeger. According to Mrs. Jaeger, defendant was with her at her parents' house in Jim Thorpe hanging Christmas decorations from 9:30 A.M. until approximately 11:00 A.M. (N.T. 7/20/12, pp.111-12). Mrs. Jaeger further testified that she did not observe her husband consuming any alcoholic beverages during this period of time. To the contrary, Mrs. Jaeger testified that since defendant had been prescribed his medications, he no longer consumed any alcoholic beverages because he knew the side effects of doing so. (N.T. 7/20/12, pp.133-35, 216).

Next to testify was defendant's mother, Susan Jaeger. Defendant's mother testified she was with defendant at her daughter's apartment in Lehighton from approximately 11:30 A.M. until 5:00 P.M.[11]. She also testified that she did not observe defendant consuming any alcoholic beverages during this period. However, it is important to note that

11. While at his wife's parents' house, defendant received a phone call from his sister between the hours of 10:00 A.M. and 11:00 A.M. indicating that her vehicle had been stolen. In response, defendant went to his sister's apartment, arriving there sometime between 11:00 A.M. and 11:30 A.M.

defendant's mother was not physically in her son's presence during this entire five and a half hour period, as she remained outside, in her vehicle, while defendant was inside the apartment with his sister.[12] Finally, defendant's mother testified that defendant left her daughter's apartment at around 5:00 P.M. to get her coffee. When he did not return by 5:30 — 6:00 P.M., she thought he had forgotten about the coffee. (N.T. 7/20/12, pp.149).

Defendant then called his friend, Jim Kemmerer who lives in Lehighton. Mr. Kemmerer testified defendant arrived at his home close to 5:00 P.M. Mr. Kemmerer also stated that defendant was worked up about his sister's car being taken and that he tried to calm him down. Mr. Kemmerer denied that defendant consumed any alcohol while he was with him. Finally, because as defendant left, he told Mr. Kemmerer he was going back to his sister's apartment, Mr. Kemmerer did not understand why the accident happened where and when it did. (N.T. 7/20/12, pp.157-58). Defendant's father, Richard Jaeger, who next testified, stated that defendant was supposed to pick up his sister's daughter, Jaden, in Palmerton sometime between 5:15 P.M. and 5:30 P.M., but that defendant failed to show. (N.T. 7/20/12, pp.146-47, 150, 169-70).

Defendant was the last person to testify on his behalf. Defendant testified that he left his sister's apartment sometime between 4:15 P.M. and 4:30 P.M. to get something

___

12. While defendant was inside his sister's apartment, defendant's mother waited outside to see if the individual responsible for taking her daughter's vehicle would return. As such, she saw defendant only a couple of times that day, when he came to bring her water. Defendant's sister did not testify.

to eat and to pick-up coffee for his mother. (N.T. 7/20/12, p.180). He admitted first going to Mr. Kemmerer's home where he remained for thirty to forty minutes, leaving at approximately 5:00 P.M.

To account for the hour and a half gap between when he left Mr. Kemmerer's home and the time of the accident, defendant testified that on his way to McDonald's (located on Route 443) to get something to eat, he stopped at the Lehighton Rite Aid for approximately an hour to fill a prescription. He then decided to go to Walmart, where he was headed at the time of the accident. He never credibly explained why he was running more than an hour late to pick up his niece; why no recently filled prescription was found in his vehicle when searched by Sergeant Lawrence; or why, after more than two hours had passed since he left his sister's apartment, he had yet to eat or get coffee for his mother. Defendant maintained, nevertheless, that he did not drink any alcoholic beverage during this period.

Defendant's account of how the accident occurred was as follows: he was traveling westbound on Route 443 on his way to Walmart. There was a vehicle directly in front of him "brake checking him"; however, he could not slow his vehicle down, as there was another vehicle directly behind him. Suddenly, as he was in his lane of traffic, he was struck on the side by the Stankavages' vehicle.

To explain his erratic behavior after the accident, defendant claimed he sustained a concussion in the accident. To support that claim, defendant testified that for two days after the accident he was not himself — that

among other things, he was confused, dizzy, off balance, nauseous and experiencing headaches. As a consequence, he went to St. Luke's Miners Memorial Hospital in Coaldale on December 6, 2010, where he reported his symptoms, had some imagining studies taken which were normal, and received the clinical impression that he had sustained a concussion. This impression was based solely on defendant's self-reporting, two days after the accident, and after defendant had been arrested for DUI, refused a blood alcohol test, and told Officer Penn he was not injured. Further, defendant's claim of sustaining a concussion in the accident does not explain his conduct before the accident and which was the cause of the accident: why he drove in the opposing lane of traffic and failed to safely return to his lane of traffic.

It is clear that each of the witnesses who testified in defendant's behalf had an interest in helping him. It is also clear that in order to accept their testimony we would have to disregard the testimony of the arresting officer concerning the indicia of intoxication he observed, including the odor of alcohol on defendant's breath and the statement given by defendant that he had been drinking that day. Defendant further asks us to disbelieve the testimony of wife about defendant driving in her lane of traffic against on-coming traffic for a distance of almost three hundred and fifty feet. We did not do so, accepting instead the evidence presented by the Commonwealth.

After considering the totality of the evidence, we found that defendant was under the influence to a degree which rendered him incapable of safe driving. Given the evidence,

the verdict is not so contrary to the evidence as to shock one's sense of justice. Accordingly, defendant's conviction for DUI in violation of 3802(a)(1) should stand.

## B. DUI — Section 3802(d)(3)

Lastly, defendant claims that his conviction for violating Section 3802(d)(3) was against the weight of the evidence because the Commonwealth did not present a drug recognition expert, or introduce evidence of defendant's BAC level or the concentration of drugs in his system. As previously stated, the Commonwealth is not required to present a drug recognition expert in proving its case pursuant to Section 3802(d)(3). Further, Section 3802(d)(3), by its plain language, does not require that the Commonwealth establish defendant's BAC level or quantify, to any extent, the amount of drugs in his system.

The Commonwealth offered circumstantial evidence to establish that defendant had been operating the motor vehicle while under the influence of a combination of alcohol and drugs. This evidence showed that defendant was driving on the wrong side of the road prior to colliding with the Stankavages' vehicle; that defendant exhibited signs of intoxication; that defendant had consumed at least two alcoholic beverages at some point before the accident; that defendant admitted he was unable to perform the field sobriety test because of the medication he had taken; and that defendant, at the time of the accident, was not only heavily medicated, but had also consumed alcohol notwithstanding medical advice not to mix the

two. Defendant failed to produce any credible testimony to refute the Commonwealth's evidence. As such, his conviction for DUI in violation of Section 3802(d)(3) was appropriate.

## CONCLUSION

In accordance with the forgoing, we conclude defendant's contentions are without merit. We, therefore, find that defendant is not entitled to any of the remedies he seeks.