J-S03014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :              PENNSYLVANIA
                                 :
              v.                 :
                                 :
                                 :
                                 :
GLAVIN JUSTAN IVY                :
                                 :
          Appellant              :     No. 685 WDA 2021

Appeal from the PCRA Order Entered May 17, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001780-2014

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: MAY 24, 2022**

Glavin Justan Ivy appeals, *pro se*, from the order, entered in the Court

of Common Pleas of Mercer County, denying his petition filed pursuant to the

Post Conviction Relief Act (PCRA).  42 Pa.C.S.A. §§ 9541-9546.  After careful

review, we affirm.

This Court has previously summarized the underlying factual and

procedural history:

> Ivy and A.C. met on a dating website and dated for about two
> weeks before the incident that led to [Ivy's convictions].  During
> those two weeks, they engaged in consensual sexual intercourse.
>
> On November 17, 2014, Ivy became enraged because of pictures
> on A.C.'s Facebook page and engaged in a heated conversation
> with her online.  During that argument, Ivy belittled A.C.[,
> repeatedly told her to kill herself, used racial slurs, and called her,
> *inter alia*, a "slut," "lying dirty skank," "ugly bitch," and "whore."]
> In an attempt to the salvage the[] relationship, A.C. went to Ivy's

_____

[*] Retired Senior Judge assigned to the Superior Court.

apartment on the evening of November 18, 2014. Shortly after she arrived, Ivy led A.C. into his bedroom and locked the door. He called her a "stupid bitch," and forcibly pushed her back onto the bed when she rose to leave. The two continued to argue over the Facebook posts and Ivy then physically assaulted A.C. [by] striking her twice in the face, choking her until she began to black[ ]out, and pulling her hair so hard she began to cry. Ivy then began to cry too, and apologized. After [Ivy] calmed down, the two talked and joked for a while before Ivy suggested they have sex. A.C. agreed and removed her clothes herself. She [testified at trial]: "I was afraid that he would take it from me forcefully or hurt me further so I agreed just so that I wouldn't get hurt anymore." Ivy then raped [A.C.] He agreed to let her leave around 3:00 a.m. so that she could go home to get ready for work. [Later that day, a]fter work, A.C. went to her parents' house and showed them the bruises on her neck. Her parents insisted she report the incident to police, which she did. A.C. also obtained a Protection from Abuse (PFA) order against Ivy on December 16, 2014, which he later violated. . . . [T]he Commonwealth was permitted to present testimony from Ivy's [] ex-girlfriend, C.D., who alleged Ivy physically and sexually abused her during their relationship just months before he began dating A.C.

Ivy was subsequently arrested and charged with rape, kidnapping, aggravated assault, unlawful restraint, and simple assault [for the incident involving A.C.] Both parties filed pretrial motions in *limine* to obtain rulings on the admissibility of certain evidence at trial. [T]he Commonwealth filed a motion in *limine* [] seeking to introduce evidence of Ivy's prior bad acts pursuant to [Pa.R.E.] 404(b)(2). Specifically, the Commonwealth sought to present the testimony of C.D. concerning the prior verbal, physical, and sexual abuse Ivy subjected her to, as well as copies of PFAs obtained against Ivy by A.C., C.D., and another ex-girlfriend, M.F., and proof of Ivy's violations of those PFAs. Following a hearing, on July 31, 2015, the trial court entered an order granting[,] in part, and denying[,] in part, the Commonwealth's motion. [T]he court permitted the Commonwealth to present the testimony of C.D., and supporting documentation, regarding the abuse she suffered during her relationship with Ivy. However, the court denied the Commonwealth's motion to introduce certified copies of the PFAs, and violations thereof, obtained against Ivy by A.C., C.D., and M.F. Although the court later granted the Commonwealth's motion for reconsideration, it subsequently entered an identical order on September 10, 2015. The Commonwealth filed a timely

interlocutory appeal to this Court, challenging the trial court's preclusion of the PFA evidence. Ivy filed a cross-appeal, challenging the court's ruling permitting C.D. to testify about her prior relationship with him.

On August 19, 2016, a panel of this Court reversed that part of the trial court's order excluding the Commonwealth from presenting certified copies of both the PFAs obtained against Ivy, and his subsequent violations. *See Commonwealth v. Ivy*, 146 A.3d 241, 257 (Pa. Super. 2016). However, the panel quashed Ivy's cross-appeal as interlocutory. The panel noted, "[i]n this situation, if [Ivy] is ultimately convicted, the trial court's decision to admit the evidence can be reviewed through [Ivy's] right to a direct appeal; thus, the claim will not be lost." *Id.* at 256

Upon remand, the case proceeded to a jury trial. On November 18, 2016, the jury returned a verdict of guilty on all charges. That same day, the court ordered a pre-sentence investigation report, and directed the Sexual Offender Assessment Board (SOAB) perform an assessment of Ivy to determine if he met the criteria for classification as a [Sexually Violent Predator (]SVP[)]. On March 14, 2017, the court conducted a combined SVP and sentencing hearing. The trial court agreed with the SOAB assessment that Ivy met the criteria for classification as an SVP, and sentenced him to an aggregate term of 19 to 60 years' imprisonment. . . . Ivy [filed post-sentence motions, which were denied following a hearing].

*Commonwealth v. Ivy*, 1178 WDA 2018 (Pa. Super. Filed July 30, 2019) (unpublished memorandum decision at **2-6) (unnecessary punctuation, footnotes, and some citations omitted).

Ivy appealed and this Court affirmed his convictions.[1] *See id.* However, this Court, *sua sponte*, vacated Ivy's SVP designation and his SORNA reporting requirements and remanded for the trial court to determine the appropriate

---

[1] On direct appeal, Ivy challenged only the sufficiency of the evidence, the weight of the evidence, and three prosecutorial misconduct claims that pertained to allegations that the Commonwealth had knowingly presented perjured, or otherwise false, evidence to the jury. *See id.*

registration and reporting requirements pursuant to **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) and **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. Super. 2017).

On February 12, 2020, Ivy filed the instant *pro se* PCRA petition. On March 12, 2020, Ivy filed a *pro se* memorandum of law in support of his petition, as well as an affidavit of exhibits. On May 18, 2020, the PCRA court conducted a PCRA discovery hearing.

Prior to the first PCRA evidentiary hearing, Ivy filed a *pro se* motion for the appointment of standby counsel, which the PCRA court granted on July 15, 2020, appointing Whalen Law Offices as standby counsel. Ivy later filed a *pro se* amended PCRA petition. Prior to the PCRA hearings, Ivy filed several *pro se* requests for subpoenas of witnesses; however, the Commonwealth filed a motion to quash some of those subpoenas, and the PCRA court granted the Commonwealth's motion.

Ultimately, the PCRA court conducted six PCRA evidentiary hearings on August 18, 2020, August 20, 2020, September 2, 2020, October 1, 2020, October 8, 2020, and October 15, 2020. On May 17, 2021, the PCRA court denied Ivy's PCRA petition.

Ivy filed a timely *pro se* notice of appeal[2] and a court-ordered Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal. Ivy now raises

the following claims for our review:

> [1.] Whether the PCRA court erred as a matter of law or abused its discretion in denying [Ivy]'s amended PCRA petition?
>
> [2.] Whether the PCRA court erred or abused its discretion when it (1) denied [Ivy]'s attempts to call witnesses Kirt Snyder, Melissa Trollman, Andy Frank, and Mike Rhoades and (2) denied [Ivy]'s attempts to submit PCRA exhibits 43 and 44, all of which deprived [Ivy of] his right to be heard and his right to a full and fair hearing?

Brief for Appellant, at 4.[3]

> We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decisions on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no

---

[2] Prior to the filing of Ivy's appeal, Whalen Law Offices had not been granted permission to withdraw. Accordingly, this Court issued an Order directing the PCRA court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to determine whether Ivy wished to proceed *pro se*. The PCRA court conducted this hearing and concluded that Ivy wished to proceed *pro se*. Accordingly, Whalen Law Offices was permitted to formally withdraw from representation.

[3] We observe that Ivy raises in excess of 20 individual claims in his brief and, accordingly, could find them all waived as not included in his statement of questions or fairly suggested thereby. **See** Pa.R.A.P. 2116 (statement of questions "**must** state concisely the issues to be resolved . . . [and] no question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby") (emphasis added). Nevertheless, these claims were presented to the PCRA court and addressed in its opinions and, thus, we address them as well.

such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In his first issue, Ivy raises numerous sub-issues, which are included in his underlying PCRA petition and amended PCRA petition. For ease of disposition, many of these issues are addressed together.

In Ivy's first sub-issue, he contends that his counsel was ineffective in failing to object to the Commonwealth's prosecutorial misconduct when it made false statements to the trial court and defense counsel regarding the admissibility of its Rule 404(b) evidence. Brief for Appellant, at 11. Ivy argues that Rule 404(b) precluded C.D.'s testimonial evidence. ***Id.*** Ivy claims that the Commonwealth "misrepresented the nature of evidence in its possession, deceiving the [trial court] and [this Court] that exceptions to [Rule] 404(b) applied in this case." ***Id.*** Ivy further contends that the Commonwealth lied about its evidence and how the evidence fell under a Rule 404(b) exception. ***Id.*** at 11-13. In particular, Ivy argues that the Commonwealth falsely accused him of engaging in "physiognomy"[4] to select his victims. ***Id.*** Additionally, Ivy contends that the Commonwealth committed prosecutorial misconduct by misrepresenting the context of his PFA violations. ***Id.*** at 12.

---

[4] Physiognomy relates to the assessment of a person's character or personality based upon the person's outward appearance. ***See Ivy***, 146 A.3d at 246.

- 6 -

Generally, counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that [:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted). With regard to reasonable basis, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we [] examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127-28 (Pa. 2011). Counsel's chosen strategy will lack a reasonable basis only if the appellant can prove "that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.*

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of affair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if a prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

***Commonwealth v. Bedford***, 50 A.3d 707, 715-16 (Pa. Super. 2012). Additionally, "[a] prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record[.]" ***Commonwealth v. Reid***, 99 A.3d 470, 507 (Pa. 2014).

While Ivy purports to couch this claim in terms of ineffective assistance of counsel, he only includes the standard of review, and does not apply any of the three ineffectiveness prongs to the facts of this case. Rather, Ivy's entire argument is focused on whether the prosecutor committed prosecutorial misconduct, and whether his claim had been previously litigated on direct appeal. Because Ivy did not plead or prove all three prongs of the ineffectiveness test, his claim fails.[5] ***See Holt***, ***supra***.

In Ivy's second sub-issue, he claims that, even if prosecutorial misconduct did not occur, his trial counsel was ineffective in failing to challenge the admission of Rule 404(b) evidence. Brief for Appellant, at 13. Ivy argues that, at the PCRA hearing, trial counsel testified that he had no basis for failing to object to the admission of the *nolo contendere* pleas to PFA violations under Pa.R.E. 410, which precludes the admission of such pleas even for Rule 404(b) purposes. ***Id.*** Further, Ivy contends that trial counsel's failure to oppose the evidence, precluded him from seeking review of this

---

[5] Moreover, it is unclear as to how trial counsel rendered ineffective assistance where counsel filed a response to the Commonwealth's Rule 404(b) motion, was initially successful before the trial court, and filed a cross-appeal in an attempt to counter the Commonwealth's interlocutory appeal. Because Ivy does not address any of these contentions, his claim fails for this reason as well.

claim on direct appeal. *Id.* at 13-14. Ivy also asserts that this Court specifically "left open the door to properly raise a challenge under Pa.R.E. 404(b) during a direct appeal." *Id.* at 16 (citing *Ivy*, 146 A.3d at 256).

Ivy contends that his counsel was ineffective for failure to address Pa.R.E. 410. Rule 410 states, in relevant part, as follows:

> **(a) General rule.** Except as otherwise provided by this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> \* \* \*
>
> (2) a plea of *nolo contendere*;
>
> \* \* \*
>
> **(b) Exception.** A statement made in the course of a plea, proceedings, or discussions identified in subsection (a) of this rule is admissible (1) in any proceeding wherein another statement made in the court of the same plea or plea discussions has been introduced by the defendant and the statement ought in fairness to be considered contemporaneously with it, or (2) in a criminal proceeding for perjury, false swearing or unsworn falsification to authorities if the statement was made by the defendant, under oath, and in the presence of counsel.

Pa.R.E. 410(a)(2), (b).

Preliminarily, we must address whether our review of this claim is precluded by the law of the case doctrine. Under the law of the case doctrine, "when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous." *Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005)

Instantly, this Court, in an interlocutory appeal, determined that C.D.'s testimony, PFA order, and the subsequent PFA violations were admissible under Rule 404(b) as part of the common scheme and plan exception. **See Ivy**, 146 A.3d at 257. It is clear that this Court addressed that narrow issue, and that no party addressed Rule 410. Even assuming, *arguendo*, that this Court has previously decided the applicability of Rule 410 in this case, we would conclude that there has been a change in circumstance due to Ivy's convictions.

We now turn to the issue raised by Ivy. It is clear that Pa.R.E. 410 expressly prohibits the admission of *nolo contendere* pleas to criminal offenses unless they are being used for impeachment. Pa.R.E. 410(a)(2); **Commonwealth v. Moser**, 999 A.2d 602, 607 (Pa. Super. 2010). Notably, Rule 410 only prohibits the admission of Ivy's *nolo contendere* pleas to the PFA violations.[6] Accordingly, Ivy has established both that, with regard to his *nolo contendere* pleas to the PFA violations, his underlying claim has arguable merit, and that his counsel lacked a reasonable basis for failing to object on this basis. **See** Pa.R.E. 410(a)(2); **Moser**, **supra**. Nevertheless, we conclude that Ivy has failed to establish prejudice.

In addressing this claim, the PCRA court stated as follows:

---

[6] We note that orders granting PFAs do not constitute criminal offenses and Ivy did not plead *nolo contendere* to the PFAs, and, thus, these would be admissible under Rule 404(b) without implicating Rule 410. Thus, Ivy's claims regarding the PFA orders are meritless, and his counsel was not ineffective for failing to object to these under Rule 410. **See Holt**, **supra**.

- 10 -

Both of the PFA violations at issue involved illicit contact through third parties. One violation involved an [o]rder protecting the victim, [A.C.], and the other . . . protecting the [Rule] 404(b) witness, [C.D.]

Defendant's Exhibit 1 is an [o]rder filed January 15, 2015[,] indicating that [Ivy] had entered a no contest plea to a violation of a PFA [o]rder dated December 16, 2014. Defendant's Exhibit 49 is a [p]olice [c]riminal [c]omplaint alleging the violation of that [order].

\* \* \*

Defendant's Exhibit 2 is an [o]rder filed March 27, 2015[,] indicating that [Ivy] had entered a no contest plea to a violation of a PFA [o]rder. This [o]rder protected the [Rule] 404(b) witness [C.D.] [Ivy] violated the [o]rder by directing [A.C.] to contact [C.D.] through Facebook.

\* \* \*

[Ivy] is mistaken when he argues that two PFA violations that "were the result of a plea of no-contest" were barred by Pa.R.E. 410. The rule states that evidence of a *nolo contendere* plea is not admissible against the person who made the plea. Other evidence of the violations would not be excluded by Rule 410, including potential[] testimony . . . . Even assuming trial counsel erred by not making an argument to [the Superior Court] specifically focused on the application of Rule 410 to [Ivy]'s no contest pleas . . . [t]here was no[] prejudice because the violations could be established by other evidence and because the harmfulness of the jury knowing about the no contest pleas to the violations based on contact through a third party was dwarfed by the harmfulness of other [Rule] 404(b) evidence such as [C.D.]'s testimony that [Ivy] repeatedly raped and assaulted her.

\* \* \*

[E]ven without the PFA violations, there are a number of apparent factual similarities between the victimization of [A.C.] and the alleged victimization of [C.D.,] such as their being raped, assaulted, prevented from leaving, subjected to controlling and jealous behavior, and the underlying PFA Orders.

- 11 -

PCRA Court Opinion, 5/17/21, at 7-8, 11-12.

We agree with the well-reasoned conclusion of the PCRA court. Moreover, we observe that at the jury trial, the trial court issued numerous cautionary jury instructions[7] at the request of Ivy's trial counsel. ***See Commonwealth v. Travaglia***, 28 A.3d 868, 882 (Pa. 2011) (juries are presumed to follow trial court's instructions). These jury instructions were offered before and after C.D.'s testimony, which included the introduction of Ivy's *nolo contendere* pleas to the PFA violations. ***See*** N.T. Jury Trial, 11/16/16, at 114-16 (*nolo contendere* pleas to PFA violations admitted as Commonwealth's Exhibits 8 and 9).

Furthermore, while Ivy's *nolo contendere* pleas to the PFA violations were inadmissible, this error is not prejudicial in light of the evidence brought against Ivy, as highlighted by the PCRA court. In particular, C.D.'s testimony regarding Ivy's abusive behaviors during their relationship was particularly damaging to Ivy and constituted nearly 100 pages of testimony before the jury. ***See*** N.T. Jury Trial, 11/16/16, at 57-154. Importantly, despite its admission into evidence, there was minimal reference to or discussion of Ivy's PFA violations. Indeed, while C.D. testified to the underlying facts resulting in the PFA violations, the Commonwealth spent merely one page in the

---

[7] We note that the trial court provided several cautionary instructions before and after C.D.'s testimony, as well as during its charging of the jury. ***See*** N.T. Jury Trial, 11/16/16, at 56-57, 154-58; ***Id.*** (Last Day), 11/18/16, at 96-99, 101-04, 106-08 (relating to reasonable doubt, witness credibility, and C.D.'s testimony). However, we have omitted them here to retain some amount of brevity.

transcript discussing, and admitting into evidence, the actual PFA violations. It is clear from our review of the record that any reference to Ivy's PFA violation was minor and insignificant. Therefore, we conclude that Ivy has failed to establish that he suffered prejudice from the admission of the *nolo contendere* PFA violations due to the limited reference, coupled with the trial court's numerous cautionary instructions.[8] ***See Holt***, ***supra***; ***Travaglia***, ***supra***.

In his third sub-issue, Ivy contends that his direct appeal counsel rendered ineffective assistance by failing to pursue a challenge to the Rule 404(b) evidence. Brief for Appellant, at 17-18. He argues that direct appeal counsel raised waived claims, such as prosecutorial misconduct, rather than the meritorious Rule 404(b) challenge. ***Id.*** at 18-19. Additionally, Ivy

---

[8] Additionally, to the extent that Ivy relies on ***Moser*** for the proposition that this Court "rejected the Commonwealth's attempts to use the underlying facts elicited at the *nolo contendere* plea hearing," this is a misreading of our decision in ***Moser***. In ***Moser***, this Court expressly stated that, in accordance with Rule 410, evidence of a *nolo contendere* **plea** is generally inadmissible. ***See Moser***, ***supra***. Additionally, and relevant here, in ***Moser*** the Commonwealth was seeking to introduce the testimony **from the plea hearing**, which this Court expressly barred. ***See id.*** at 604, 607-08. However, this Court also explained that, "[w]hile the rules of evidence bar the introduction of a **plea** of *nolo contendere* . . . the Commonwealth **may introduce evidence of** [] **prior bad acts through other means** so long as it can demonstrate the probative value of the evidence outweighs the prejudicial impact." ***Id.*** at 607 n. 8. We conclude that Ivy has misinterpreted our decision in ***Moser***, as it expressly allows the Commonwealth to present the type of evidence presented here by C.D., where the witness is able to testify.

contends that, at the PCRA evidentiary hearing, direct appeal counsel lied and, thus, did not offer credible testimony. *Id.*

We conclude that direct appeal counsel had a reasonable basis for pursuing alternative claims. At the PCRA hearings, Ivy's direct appeal counsel, Matthew Parson, Esquire, testified that he was appointed to represent Ivy on direct appeal. PCRA Evidentiary Hearing (Day 2), 8/20/20, at 96. Throughout his testimony, Attorney Parson acknowledged that a Rule 404(b) challenge to C.D.'s testimony was preserved in a post-sentence motion. *See id.* at 96-97, 102-08. Nevertheless, Attorney Parson also testified that, after several discussions with Ivy, Ivy wished to pursue a prosecutorial misconduct claim on direct appeal, rather than the Rule 404(b) challenge to C.D.'s testimony. *Id.*; *see also id.* (Day 3), 9/2/20, at 168-70, 197-207.

In its opinion, the PCRA court expressly found Attorney Parson to be credible. PCRA Court Opinion, 5/17/21, at 41-46. Additionally, the PCRA court determined that Attorney Parson had a reasonable basis for not raising the Rule 404(b) challenge on appeal. *Id.* In particular, the court concluded that Attorney Parson was appointed as direct appeal counsel, with very little time left before the expiration of time to file a post-sentence motion, and reasonably relied upon Ivy's statements regarding the issues Ivy wished to raise. *Id.* Importantly, as we noted above, it is Ivy's burden of proof to demonstrate "that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *See Chmiel*, *supra*. Instead of outlining how the purported Rule 404(b) challenge would have

succeeded on direct appeal, Ivy baldly argues that it was a meritorious claim erroneously omitted by Attorney Parson. *See* Brief for Appellant, at 18. We conclude that Ivy has failed to demonstrate that Attorney Parson did not have a reasonable basis for failing to raise a Rule 404(b) challenge.

In his fourth sub-issue, Ivy argues that the Commonwealth knowingly used false and/or perjured testimony of C.D. and A.C. Brief for Appellant, at 19. Additionally, Ivy contends that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 82 (1963), by failing to disclose prior statements made by C.D. *Id.* at 20-21. Ivy further contends that the Commonwealth was in possession of Facebook photos depicting Ivy and A.C. engaging in "playful choking." *Id.* at 30.

Preliminarily, we observe that this claim sounds in prosecutorial misconduct and, as we noted *supra*, was litigated on direct appeal before this Court. *See Ivy*, 1178 WDA 2018 (unpublished memorandum decision at **14-18) (wherein this Court addressed Ivy's prosecutorial misconduct *Brady* claim). Therefore, Ivy is granted no relief on this claim.[9] *See* 42 P.C.S.A. § 9544(a)(2).

_____

[9] To the extent that Ivy contends A.C.'s testimony was perjured, it is unclear as to how this claim satisfies *Brady* or the prosecutorial misconduct standard. In his one-page section on this argument, Ivy indicates that they had previously engaged in "playful choking" and that there are Facebook photos depicting it. Brief for Appellant, at 30. However, from his own assertions, it is clear that Ivy appeared in those photos and, thus, was aware of them. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1248 (Pa. 2006) ("no *Brady* violation occurs where parties had equal access to information or if the defendant knew or could have known such evidence existed with reasonable diligence"). Thus, Ivy is not entitled to relief on this claim.

In his fifth sub-issue, Ivy argues that, in the alternative, his trial counsel was ineffective in failing to effectively cross-examine C.D. and A.C. Brief for Appellant, at 31. In particular, Ivy contends that his trial counsel failed to cross examine C.D. regarding her allegations that Ivy had beaten and raped her. *Id.* at 32. Rather, Ivy asserts, counsel "danced around the dates of abuse, completely avoiding the substance of [C.D.'s] allegations." *Id.* Ivy also takes issue with the text messages that counsel introduced as defense exhibits, because "[they] do not relate to the dates C.D. actually alleged abuse." *Id.*

With respect to A.C.'s testimony, Ivy contends his counsel was similarly ineffective by failing to confront A.C. with statements she had given to the police regarding the assaults. *Id.* at 32. Additionally, Ivy argues that trial counsel should have questioned A.C. about the purported timeline of events, the "overall atmosphere at the time of the sexual encounter, and A.C.'s basis for believing she was in danger of being raped." *Id.* at 33-34.

In its opinion, the PCRA court found that Ivy failed to prove that his trial counsel's strategy lacked a reasonable basis. *See* PCRA Court Opinion, 5/17/21, at 14- 20. Importantly, at the PCRA hearing, trial counsel testified that:

> My trial strategy was you had produced for me a lot of photographs that [C.D.] had taken of you and her together, [] as well as e-mails [and] text messages, that you gave me from your records of her communicating with you during this whole two-month time period, March and April of 2014, photographs showing her having a good time with you: smiling, associating with you on many of these same dates that she was claiming that you were

abusing her. And also[,] the messages that she sent you talking about having a great deal of affection for you, loving you, loving being with you, loving doing things with you.

* * *

Q: Okay. Now what was your basis for failing to cross-examine [C.D.] whatsoever about being raped or beaten?

A: Because I didn't want to give her a chance to repeat what she'd already said.

* * *

[B]ecause[,] as I think I testified earlier, that was a – that was a hard decision I had to make. I was concerned that if I brought out directly the fact that she had not alleged these additional assaults initially, that she would testify – my investigation led me to conclude . . . that she liked drama, she liked to be the center of attention, she liked to perform in the jury box [*sic*]. When she testified on direct, she didn't even look at counsel, she directed herself to the jury all the time in answering the questions. You could see that she was playing to the jury. I was concerned that she was an explosive uncontrollable witness that I would have to be very[,] very careful with . . . In my opinion[,] with her, because she wanted to nail you, I was concerned that if I got into too many prior inconsistencies, that she would have a chance to say, yeah, I didn't say those because I was hoping he would change. . . .

Then when [A.C.] claimed that you assaulted her in November, that [C.D.] realized, well, he hasn't changed and came out with these additional allegations. Her allegations may have been overblown, they may have been lies, they may have been embellishments, they may have been partial truths . . . but I didn't want [] her to be rehabilitated.

That's why I focused on the e-mails that we had that you and her exchanged during the period of time that she was claiming the assaults, those two or three weeks in April, focused on the photographs that you showed me, and that we showed the jury of the loving relationship between the two of you, to weaken her testimony and [] put some thought in the jury's mind [–] maybe this woman is not being completely forthright here.

N.T. PCRA Evidentiary Hearing (Day 1), 8/18/20, at 63-64; *id.* (Day 3), 9/2/20, at 85-87; *see also* PCRA Court Opinion, 5/17/21, at 14-18 (quoting trial counsel and concluding counsel had a reasonable basis)

With regard to Ivy's claims of ineffectiveness for failure to effectively cross-examine A.C., trial counsel testified:

> Well, as I said, there was never any – there was never any testimony directly by her that she was raped . . . that's why I tried to emphasize on cross-examination of her that she admitted there was intercourse; she admitted that she was on top during the intercourse; she admitted that she undressed for the intercourse; trying to show that it wasn't a threat of forcible compulsion that caused her to engage in intercourse.

N.T. PCRA Evidentiary Hearing (Day 3), 9/2/20, at 148-49. The PCRA court similarly concluded that trial counsel had a reasonable basis for his strategy. *See* PCRA Court Opinion, 5/17/21, at 18-20.

Our review of the record confirms the PCRA court's determinations, and we discern no abuse of discretion. *See Ford*, *supra*; *Holt*, *supra*. Importantly, merely because an alternative strategy exists does not mean counsel's strategy was unreasonable. *See Chmiel*, *supra*. Thus, Ivy is due no relief on these claims.

In his seventh and eighth sub-issues, which we address together, Ivy contends that the discovery policy of the Mercer County District Attorney's Office was unlawful and, further, that his trial counsel was ineffective in failing to object to said policy. Brief for Appellant, at 40-46.

The PCRA court concluded that the DA's policy is **not** unlawful and, thus, Ivy had not demonstrated arguable merit of his ineffectiveness claim. PCRA

Court Opinion, 5/17/21, at 5-6.[10]  Our review of the record confirms the PCRA court's conclusions, and we affirm on this basis.  **See Ford**, **supra**; **Holt**, **supra**.

In his ninth and tenth sub-issues, Ivy argues that his trial counsel was ineffective in failing to effectively cross-examine the Commonwealth's expert witness, forensic pathologist Dr. Eric Vey.  Brief for Appellant, at 47.  Ivy further argues that trial counsel was ineffective for representing to the jury that bruises found on A.C.'s neck were caused by the lifting of cardboard boxes or from hot plastic.  Ivy argues that his counsel failed to question Dr. Vey regarding the lack of petechial hemorrhages in association with A.C.'s bruising.  **Id.** at 48.

The PCRA court, in its opinion, concluded that trial counsel had a sound strategy in his cross-examination of Dr. Vey.  **See** PCRA Court Opinion, 5/17/21, at 21-23.  In particular, the PCRA court highlighted that trial counsel, through cross-examination, emphasized that Dr. Vey did not perform a medical examination of anyone in this case, and had only observed the bruising on A.C.'s neck via photographs.  **Id.**  This line of inquiry called into

---

[10] Because the PCRA court's opinion is largely block quotes of the law, we again, in an attempt to retain some brevity, do not quote it in full here.  Briefly, the PCRA court relied upon **Williams v. Dark**, 844 F.Supp. 210, 213 (E.D. PA. 1993), for the proposition that, under Pennsylvania law, a defendant has no independent right to his own copy of discoverable documents in a state court criminal proceeding where he is represented by counsel.  PCRA Court Opinion, 5/17/21, at 5.  Additionally, the PCRA court relied upon the Mercer County District Attorney's Office's discovery policy, and Pa.R.Crim.P. 573, relating to Pretrial Discovery and Inspection.  We discern no abuse of discretion nor error of law in the PCRA court's analysis.

question Dr. Vey's "ability to effectively observe the injuries to the victim and his knowledge of the underlying facts." *Id.* at 22. We agree with the PCRA court's determinations and conclusions on this claim, and we affirm on this basis. *See id.*; *see also Holt*, *supra*.

In his eleventh sub-issue, Ivy argues that his counsel should have called an expert witness to testify on his behalf. Ivy asserts that Dr. Kevin Whaley was available and willing to testify on his behalf. Brief for Appellant, at 49. Ivy purports that Dr. Whaley had viewed the same evidence as Dr. Vey, but concluded that the bruising was consistent with "tissues being pulled" rather than strangulation. *Id.* at 50. In particular, Ivy claims Dr. Whaley would testify that, if the bruising was caused by strangulation, the bruising would cover a larger area of the neck. *Id.* Doctor Whaley would have further posited that, due to the coloration of the bruising, it was likely that the bruises would have been caused approximately 36 hours before the photographs were taken, whereas A.C. testified that the photographs were taken 22 hours after the assault. *Id.* at 50-51. Ivy acknowledges that there was no evidence presented that his counsel knew of Dr. Whaley, but asserts that this is not an element of his claim and he is not required to prove that counsel should have known of Dr. Whaley's existence and availability. *Id.* at 51. Ivy is mistaken.

"Where a claim is made of counsel's ineffectiveness for failure to call witnesses, it is the appellant's burden to show that the witness existed and was available." *Chmiel*, 30 A.3d at 1143. Further, appellant must prove that "**counsel was aware of, or had a duty to know of the witness**; the

witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Id.* (emphasis added). "The mere failure to obtain an expert [] witness is not ineffective [assistance of counsel.]" *Id.*

It is clear from our case law that, contrary to Ivy's assertion, he is required to prove that counsel was aware of, or had a duty to know of, the witness. *Id.* Thus, Ivy's failure to satisfy this element is fatal to his claim and he is granted no relief. *Id.*; *Holt*, *supra*; *Ford*, *supra*.

Moreover, as the PCRA court notes in its opinion, trial counsel *was* attempting to secure an expert. *See* PCRA Court Opinion, 5/17/21, at 26. Trial counsel had been communicating with an expert prior to trial, but was waiting on an expert report. *Id.* However, the expert ultimately changed his mind and opined that the contusions on A.C.'s neck were, in fact, caused by manual strangulation. *Id.* Thus, trial counsel, despite his efforts, was left without an expert and, accordingly, Ivy's claim lacks arguable merit on this basis.

In his twelfth sub-issue, Ivy asserts that trial counsel was ineffective for failing to object to improper remarks made during the Commonwealth's closing argument. Brief for Appellant, at 52. Ivy argues that the prosecutor made inappropriate comments, insinuating Ivy had lied during his interview with police. *Id.* at 53. Additionally, Ivy contends that the prosecutor mischaracterized Ivy's behavior in the interview as "indicators of deception." *Id.* at 54. Ivy acknowledges that his interview with police was played for the

- 21 -

jury and that credibility determinations are solely within the province of the jury. *Id.* at 53-54.

We noted our standard of review above. *See Bedford*, *supra*. Additionally, we are cognizant that "[p]rosecutorial misconduct will not be found where comments were . . . only oratorical flair." *Commonwealth v. Jones*, 668 A.2d 491, 514 (Pa. 1995). While it is improper for a prosecutor to express a personal belief as to the credibility of a witness or the defendant, a prosecutor may comment on the credibility of witnesses. *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009). Additionally, prosecutors are generally permitted to respond to defense arguments with logical force and vigor. *Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005). Nevertheless, even if a prosecutor's remarks were prejudicial, "prejudice by prosecutorial remarks can be cured by instructions from the trial court." *Commonwealth v. Carter*, 643 A.2d 61, 77 (Pa. 1994); *see also Jones*, 668 A.2d at 504 (law presumes jury will follow trial court's curative instructions); *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013) (new trial not warranted where trial court gives adequate cautionary instruction).

Instantly, we conclude that these comments amount to nothing more than oratorical flair and advocacy on behalf of the Commonwealth. It is clear from the record, and extensive argument in Ivy's brief, that A.C.'s credibility was of paramount concern in this case. It logically follows that much of the Commonwealth's case focused on A.C.'s testimony and proving the veracity of her testimony. Thus, it similarly follows that the prosecutor's primary

arguments to the jury would be that A.C.'s testimony was truthful and Ivy's representations to the police were not. Additionally, during closing argument, defense counsel contested the credibility of A.C.'s testimony that, *inter alia*, Ivy had choked A.C. and argued to the jury that the marks were a result of "hickies." N.T. Jury Trial (Last Day), 11/18,16, at 58-62. The prosecutor was, thus, able to appropriately respond to these contentions. *See Chmiel*, 889 A.2d at 544. We conclude that these comments do not amount to prosecutorial misconduct and, thus, Ivy's counsel was not ineffective for failing to object to them. *See Carter*, *supra*; *see also Judy*, *supra*.

Moreover, even if these remarks were prejudicial, the record reveals that the trial court issued two cautionary instructions in which it advised the jurors that comments by the attorneys are not facts of record. *See* N.T. Jury Trial (Last Day), 11/18/16, at 47-48; *Id.* at 97-99 (instructing jury that attorneys summations and arguments are not facts, that jury is not required to accept attorney arguments, and that differences between jury's recollection and attorney arguments should resolve in favor of jury's recollection). Accordingly, we conclude that this claim lacks arguable merit. *See Carter*, *supra*; *Bryant*, *supra*; *Holt*, *supra*.

In his thirteenth sub-issue, Ivy argues his trial counsel was ineffective for failing to object to the rape statute, 18 Pa.C.S.A. § 3121, as unconstitutionally void for vagueness. Brief for Appellant, at 55. Ivy asserts that the PCRA court's denial of this claim constitutes a misapplication of the law because the factual scenario of Ivy's case necessitates a finding of void

for vagueness.  *Id.* at 56-57.  Ivy contends that, in his case, his rape conviction was "bootstrapped" to his simple assault "merely because [it was] alleged to occur on the same day."  *Id.* at 57.  We disagree.

> [T]here is a strong presumption in the law that legislative enactments do not violate the constitution.  Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute.  While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident intent of the statute.  A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.
>
> *    *    *
>
> As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  [A] statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.  Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge their future conduct.
>
> A statute is ["]overbroad["] if by its reach it punishes constitutionally protected activity as well as illegal activity.  The language of the statute in question literally encompasses a variety of protected lawful conduct.

*Commonwealth v. McCoy*, 895 A.2d 18, 29-30 (Pa. Super. 2006).

Under the Crimes Code, rape, in relevant part, occurs when "a person . . . engages in sexual intercourse with a complainant[] . . . by forcible compulsion."  18 Pa.C.S.A. § 3121(a)(1).  Forcible compulsion does not only include compulsion by use of physical force, but also "intellectual, moral, emotional[,] or psychological force, either express or implied."  *Id.* at § 3101.

Importantly, we note that Ivy does not cite to any case law in this Commonwealth where a court has found the terms "forcible compulsion" or rape to be void for vagueness. Indeed, it is Ivy's burden of proof to demonstrate that his **counsel was ineffective** in failing to raise this claim, yet he cites to no authority to support his claim. *See Holt*, *supra*. Thus, Ivy has failed to demonstrate that his underlying claim has arguable merit and that his counsel lacked a reasonable basis in failing to raise this objection. *See Holt*, *supra*.

Moreover, to the extent that Ivy reasons the facts of his case highlights how the term "forcible compulsion" is void for vagueness, we disagree. It appears that Ivy is merely attempting to re-litigate his sufficiency claim from his direct appeal, where this Court already concluded that the facts of this case satisfy the statutory definitions of rape and forcible compulsion. *See Ivy*, 220 A.3d 692 (unpublished memorandum at **7-12). Thus, no relief is due.

In his fourteenth sub-issue, Ivy argues three separate claims that Attorney Parson was ineffective for failing to effectively litigate his sufficiency claims on direct appeal, in the appellate brief, and failed to cite to relevant case law. Brief for Appellant, at 58-63. Throughout this claim, Ivy contends that Attorney Parson misstated facts, which misled this Court's determinations. *Id.*

Initially, we note that Ivy again attempts to re-litigate his challenges to the sufficiency of the evidence. This Court has already determined that there

was sufficient evidence to sustain Ivy's convictions. *See Ivy*, 220 A.3d 692 (unpublished memorandum **7-12). Moreover, direct appeal counsel raised sufficiency challenges, which this Court addressed and found to be not meritorious. *Id.* Therefore, counsel's alleged misstatement of facts is of no moment, where this Court relied entirely upon citations to the certified record in affirming Ivy's convictions. *See* 42 Pa.C.S.A. § 9544(a)(2). Accordingly, we conclude that Ivy's claim lacks arguable merit and we grant him no relief. *See Holt*, *supra*.

In his second claim, Ivy raises another series of sub-issues which we summarize and address together. Ivy argues that the PCRA court abused its discretion when it denied his attempts to call various witnesses at the PCRA evidentiary hearings. Brief for Appellant, at 63-67. In particular, Ivy contends that the trial court erred by quashing his subpoenas to call the following witnesses: Kirt Snyder, Melissa Trollman, Andy Frank, and Mike Rhoades. *Id.* Ivy asserts that these witnesses would have established his claims of ineffective assistance of trial counsel. *Id.* Additionally, Ivy argues that the PCRA court erred when it denied admission of his 43rd and 44th PCRA evidentiary exhibits. *Id.* Ivy contends that he was not given a full and fair opportunity to present all of his claims to the PCRA court. *Id.* at 64.

The PCRA court, in addressing these claims, stated:

The [c]ourt did not prevent [Ivy] from calling [] Snyder as a witness. [Ivy] asked the [c]ourt to assist in locating Snyder so that [Ivy] could subpoena him, or provide funds for a private investigator, or compel the Commonwealth to do the same. *See* [N.T. PCRA Evidentiary Hearing, 10/15/20, at] 44-45, 49.

[Ivy]'s September 21, 2020 [m]otion to [c]all [a]dditional [w]itnesses, which the [c]ourt denied[,] concerned witnesses that had attended the same church as [Ivy], including [] Trollman, [] Frank, and [] Rhoades. [The court previously explained]:

> The [c]ourt is not convinced that the proffered testimony as set forth in the motion is relevant for a recognized PCRA purpose, e.g. ineffectiveness of counsel, but rather appears to be additional evidence challenging the credibility of the [Rule] 404(b) witness, [C.D.] [Ivy] may, and already has, presented evidence about trial counsel's alleged failures to present certain evidence at trial. Therefore, [Ivy]'s motion is denied[.]

In [its May 17, 2021, opinion, the PCRA court] explained why the proffered testimony of the witnesses could not have established a cognizable PCRA claim. *See* [PCRA Court Opinion,] 5/17/21[, at 50-53].

[Additionally, d]uring the PCRA evidentiary hearing on September 2, 2020, [Ivy] questioned his trial counsel concerning a police report authored by an Officer Derek Songer. As trial counsel explained, the report was of dubious value to [Ivy]. The officer who authored the report did not testify[, but Ivy] moved to admit the report. The [c]ourt did not admit the report but gave a brief explanation to [Ivy] and left open the possibility of later admitting the report. During the PCRA evidentiary hearing on October 15, 2020, [Ivy] again moved to admit the report during his own testimony. The Commonwealth raised an objection and argued[,] *inter alia*[,] that the report had not been authenticated. [Relying on Pa.R.E. 901, relating to authenticating or identifying evidence the PCRA court sustained the objection.]

Concerning the reports prepared by [] Snyder, the [c]ourt sustained a similar objection to their admission for the same reasons. [PCRA Evidentiary Hearing, 10/15/20, at] 42-44. However, there was extensive testimony about the contents of those reports during the PCRA evidentiary hearing, from which the [c]ourt could decide [Ivy]'s claim of a *Brady* violation.

PCRA Court Opinion, 8/4/21, at 5-7 (some citations omitted).

In addition to the above, the PCRA court explained in its May 17, 2021 opinion, that the proposed testimony from Trollman, Frank, and Rhoades was largely reputation evidence. *See* PCRA Court Opinion, 5/17/21, at 51. The court stated:

> In the aggregate, the witnesses would testify that: Trollman believed that [C.D.] was lying or being dishonest or that she would lie or be dishonest[;] [C.D.] had a reputation for and pattern of making false allegation against men in the church, including allegations of rape, to protect her reputation for chastity; Rhodes would testify that, as pastor of the church, he advised [C.D.] to report any truthful allegations that [Ivy] assaulted her to the police, which [Ivy contends] is contrary to [C.D.'s] trial testimony; Trollman received a text message from [C.D.] on April 21, 2014, when [Ivy] represents [C.D.] testified that [Ivy] had taken her phone away from her; all of the church witnesses were with [Ivy] and [C.D.] at church on April 20, 2014, when [Ivy] represents [C.D.] testified that [Ivy] abused, assault[ed], and/or otherwise victimized her; and [] Frank would testify concerning [Ivy]'s behavior at the above-referenced swing dance, and [Ivy] represents that Frank's testimony would contradict that of [C.D.] describing assaultive and/or aggressive behavior.

PCRA Court Opinion, 5/17/21, at 51-52.

Our review of the record and Ivy's claims confirms the PCRA court's summary of the evidence. As the PCRA court highlighted, it was Ivy's burden to demonstrate how this testimony would have bolstered or contributed to any of his PCRA claims. *See* PCRA Court Opinion, 8/4/21, at 6-7. Just as Ivy failed to demonstrate how the above-described evidence would bolster his PCRA claims before the PCRA court, he similarly fails to do so here. In his brief, other than baldly asserting that this testimony and evidence would bolster his claims of ineffective assistance of counsel, of which there are

several, Ivy does not provide any analysis or authority supporting his assertion. Moreover, it is clear from the six days of PCRA evidentiary hearings, amounting to approximately 600 pages of testimony and argument, that Ivy had ample time to present all of his PCRA claims. We note that the PCRA court afforded Ivy great latitude in granting him permission to amend filings and in its rulings, and endeavored to address every claim before it. In light of these facts, we cannot agree that the PCRA court denied Ivy a "full and fair opportunity" to present his claims. Thus, we cannot conclude that the PCRA court abused its discretion. **See Ford**, **supra**.

Regarding the admissibility of Ivy's 43rd and 44th PCRA exhibits, we find that Ivy has waived these claims. Ivy baldly asserts that the PCRA court erred in denying their admission, but he cites to no relevant case law supporting his position. Rather, Ivy spends the entirety of his argument on this claim addressing whether the PCRA erred in prohibiting the testimony from the above-described witnesses. Thus, this claim is waived. **See** Pa.R.A.P. 2119(a) (appellant must support argument with "such discussion and citation of authorities as are deemed pertinent"); **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief . . . fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **id.** at 925 ("It is not the role of this Court to formulate [an a]ppellant's arguments for him."). Moreover, even if Ivy had not waived this claim, we would affirm for the reasons stated in the PCRA court's August 4, 2021 opinion, highlighted above.

- 29 -

We agree with the well-reasoned opinion of the PCRA court regarding these claims, and we discern no abuse of discretion. Thus, we grant Ivy no relief. **See Ford**, **supra**.

In his final claim, Ivy contends that even if none of his prior claims warrants relief, he is entitled to relief under the cumulative error doctrine. We disagree. We have repeatedly held that "an appellant cannot bootstrap a series of meritless claims into a cumulative claim of error." **See Commonwealth v. Rolan**, 964 A.2d 398, 411 (Pa. Super. 2008) ("No number of failed claims may collectively attain merit if they could not do so individually."). Ivy is not entitled to relief on this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2022